EVA WINEGARNER, *Appellee,* V. THE EDISON LIGHT
AND POWER COMPANY, *Appellant.*

No. 16,618.

SYLLABUS BY THE COURT.

NEGLIGENCE—*Failure to Insulate Electric Wires in Streets—Injury to House Mover—Proximate Cause.* It is the duty of an
electric light and power company having wires charged with
a high voltage of electricity suspended upon poles across a
street in a city, upon which street the moving of a building
of greater height than the wires is reasonably to be antici-
pated, to insulate the wires at such crossing or to take such
other precautions as are necessary to protect any person who
is liable to be upon such building and to be brought in contact
with such wires.

Appeal from Sedgwick district court. Opinion filed
July 9, 1910. Affirmed.

*J. C. Rosenberger, Clyde Taylor,* and *Kersey Coates
Reed,* for the appellant.

*John W. Adams, George W. Adams,* and *J. D.
Houston,* for the appellee.

The opinion of the court was delivered by

SMITH, J.: This action was brought by Eva Wine-
garner to recover damages for the death of her hus-
band, caused by contact with the electric wires of the
defendant. The deceased was employed by a house
mover. His principal business was driving a team to
convey things needed in the business; but when not so
engaged it was his duty to assist in any way in the

business, and he was accustomed to handling electric wires strung along the streets when it became necessary in moving buildings under them.

In accordance with the requirements of the ordinances of the city of Wichita, the house mover, before moving the building on the streets, procured a permit therefor from the city clerk. The house mover had given notice to the defendant of his intention to move the building upon which the accident occurred, on the day before he started to move it, and the employees of the defendant had arranged to remove the wires near the building at the place from which it was to be removed. This was to be done on the morning of the removal, and the defendant's workmen remained in the neighborhood subject to call, if they were further needed.

The building was moved 350 or 400 feet to the intersection of Murdock and St. Francis streets, where the wires of the defendant company crossed the street, suspended about eighteen or twenty feet from the ground. The comb of the roof of the building was higher than the wires. The wires were raised by the house mover, or some employee, and the building was passed thereunder the greater part of its length, when it was stopped. The mover did not call upon the defendant's men to handle the wires, but testified that he intended to attend to them himself. He was detained, however, by talking to a man who sought to engage his services, and the deceased, being then unoccupied, went up a ladder, evidently to attend to the wires. In ascending the sloping roof he slipped, and either fell across or grabbed the wires, and was instantly killed by the shock. The wires were charged to a voltage of 2300. The contact of a person simultaneously with two wires so charged causes a "short circuit" of the current through the body, and is extremely dangerous to life, if not certainly fatal.

It appears that only two witnesses were called who

saw Winegarner at the time the accident occurred, and each testified that he slipped or became overbalanced on the side of the sloping roof. One said that in falling he seemed to grab for something—for anything he could reach—and came in contact with the wires, and the witness saw the flash of electricity. The other testified to about the same circumstances, except she said Winegarner appeared to fall upon the wires, and she saw the flash. Others testified that they saw the wounds upon the body; that he was burned upon the right side through his clothing, and to, or almost to, his intestines. His death appears to have been instantaneous. When he was found he was lying across the wires, or with his arm thrown over them. One witness said that a wire burned in two.

. On the trial to a jury the plaintiff recovered a judgment and verdict for $5000.

The defendant makes three assignments of error: (1) That the court erred in not sustaining the defendant's demurrer to the plaintiff's evidence; (2) that the court erred in not instructing the jury to return a verdict for the defendant at the close of the evidence; and (3) that the court erred in instructing the jury that the defendant owed the deceased a positive duty to have its wires in a condition safe for interference therewith by the deceased.

After setting forth the respective claims of the parties in their pleadings, and defining the meaning of negligence and contributory negligence, the court instructed the jury as to negligence as follows:

"You are further instructed that in maintaining its electric wires and carrying on its business in and along the streets of the city of Wichita, Kan., it was the duty of the defendant to exercise care proportionate to the risk of its business, to the end that damage might not result therefrom to others.

"You are further instructed that the degree of care required varies according to the circumstances of the particular case; and if the use of electricity by the defendant in the prosecution of its business at the times

in question is shown by the evidence to be a highly dangerous agency to life, unless exercised with great care, then, to such extent, a high degree of care in its supervision, management and use was required of the defendant at places where people had a right to go and had been in the habit of going, and would likely continue to go for work or business.

"You are further instructed that if under all the facts and circumstances in this case you find that the defendant knew or had sufficient and reasonable grounds to anticipate that persons might, while in the exercise of ordinary care for their own safety, come in contact with and be injured by any defective and dangerous wires it might operate and maintain at said place, and if you further find that the said Walter Winegarner, without carelessness on his part, and while rightfully and lawfully engaged in moving or assisting to move a house under said wires at said place, came in contact with said wires, and was, without his fault, then and there injured and killed by electricity escaping from said wires at the point of said contact, through the dangerous condition and defective insulation of said wires and the carelessness of the defendant, as set out in the petition, and that said wires were at said time and place charged with a powerful current of electricity, and that they were not properly insulated, and were unsafe and dangerous to the lives of persons who might come in contact with them, and that the defendant and its agents and employees knowingly maintained and operated said wires in said condition at said time and place, in the manner and under the circumstances charged in the petition, and if you further find that the defendant was negligent in so maintaining and operating said wires at said time and place in said condition, as charged, and that said negligence was the direct, proximate and natural cause of said injury and death resulting to said Walter Winegarner, as charged, then the defendant would be liable to the plaintiff for the damages so caused plaintiff by said death, unless you should further find that the act or acts of the said Walter Winegarner himself contributed to his own injury and death; but if the said deceased was guilty of contributory negligence in the premises, and thereby contributed to his own injury and death, then the plaintiff can not recover herein.

"You are further instructed that if a negligent act

or omission of a party is such as a person of ordinary intelligence and prudence should have foreseen that an accident and injury were liable to be produced thereby, then such negligent act or omission may be said to be the proximate cause of such accident and resulting injury.

"Negligent acts can not be the proximate cause of an injury to one unless, under all the circumstances, ordinary prudence would have admonished the person sought to be charged with the negligence that his acts or omissions would result in injury to some one; and in order to warrant your finding that any of the alleged acts or omissions of the defendant constituted the proximate cause of the injury and resulting death to the said Walter Winegarner, it must appear from the preponderance of the evidence that such injury and death were the natural and probable consequence of such negligence or omission, and that it ought to have been foreseen by defendant in the light of all the attending circumstances."

The court also instructed the jury that if the injury occurred through the contributory negligence of the deceased, the plaintiff could not recover.

The defendant urges its assignments of error for the following reasons:

"(1) The deceased was but a bare licensee; the defendant owed him no duty to have its wires in a condition safe for him to handle.

"(2) Deceased was guilty of contributory negligence as a matter of law.

"(3) Even though it be conceded that defendant owed deceased some duty other than that owed to a bare licensee, it discharged its full duty, as shown by plaintiff's evidence."

It is true that the house mover, by ordinance of the city, was required to get a permit from the city clerk before moving the building on the streets. On the other hand, by the statutes of the state, and by ordinance of the city, the defendant company was required to have the grant of a franchise and permission to set poles, etc., before engaging in the business of conducting electricity, and its business was subject to

regulation by the city, so that the company was also, in this sense, a licensee. The use of the streets, either for moving buildings or for sustaining the poles and wires of electric light and power companies, can not be said to be the ordinary use of the streets. As to the city, the house mover and the defendant were alike licensees, except that the house mover had to have a license for each particular moving, while the license to the defendant was for a certain time. It can hardly be said that the deceased was a licensee as to the defendant, or *vice versa.*

There was evidence that the company had notice of the moving of this building. Whether it had notice of its passing the particular point where the accident occurred is not shown, but there is evidence tending to show that the moving of buildings was of such frequent occurrence that the defendant must have taken notice of such use of the streets.

It is contended on the part of the plaintiff that it was the duty of the company to have its wires crossing streets so insulated as not to be dangerous to persons likely to come in contact therewith, and that the wires should be so insulated at street crossings where persons engaged in moving buildings are likely to come in contact with them.

There was evidence that the wires which caused the death of the deceased carried a current of 2300 volts, and that no insulation is efficient to save the life of a person who comes in contact with a wire carrying such a current. On the other hand, there was evidence that proper insulation would prevent injury to a person coming in contact with a wire having such voltage.

The plaintiff insists that it was impossible for the deceased, even if he voluntarily came in contact with the wires, to know anything of the strength of the current; and, on the other hand, it is insisted that the deceased should have known of the danger of coming in contact

with the wires, and that he was guilty of contributory negligence in so doing.

It is a matter of common knowledge that wires carrying only a low voltage, like, for instance, a telephone wire, are not liable to produce any injury by contact, and that wires carrying a high voltage, as shown in this case, are extremely dangerous in case of contact. The court submitted to the determination of the jury, as a question of fact, whether under all the evidence in the case the defendant was guilty of negligence, and whether the deceased was guilty of contributory negligence, and by its instructions told them that if under all the facts of the case persons were likely to come in contact with these wires, carrying the high voltage shown by the evidence, the defendant was under obligation to have the wires insulated so that injury would not result therefrom. If, on the other hand, the deceased knew of their dangerous character, and so knowing purposely came in contact with the wires, he was guilty of contributory negligence.

We think the instructions of the court to the jury were in accordance with the principles laid down in numerous cases cited with approval in *Railway Co. v. Gilbert*, 70 Kan. 261. In that case (p. 265) the following citation was made with approval from *Fitzgerald v. Edison Electric Co.*, 200 Pa. St. 540:

"Wires charged with an electric current may be harmless, or they may be in the highest degree dangerous. The difference in this respect is not apparent to ordinary observation, and the public, therefore, while presumed to know that danger may be present, are not bound to know its degree in any particular case. The company, however, which uses such a dangerous agent, is bound not only to know the extent of the danger, but to use the very highest degree of care practicable to avoid injury to every one who may be lawfully in proximity to its wires and liable to come accidentally or otherwise in contact with them." (p. 543.)

If from all the circumstances the defendant had reason to apprehend that the building would be moved

under the wires where the accident occurred, it was its duty, knowing its wires to be highly charged with electricity, to have such wires at the street crossing insulated, or to take such other precautions as might be necessary to protect anyone who might be likely to be upon such building from contact with or injury from such wires.

The case was submitted to the jury under proper instructions, and we think that the jury were amply justified by the evidence in finding that the defendant was guilty of negligence which caused the death of the deceased, and that the deceased was not guilty of contributory negligence. The judgment is therefore affirmed.