## EVANS v. SOUTHERN PAC. CO.

### (Circuit Court of Appeals, Ninth Circuit. February 3, 1913.)

### No. 2,091.

1. TRIAL (§ 142*) — QUESTIONS OF LAW OR FACT — DIRECTION OF VERDICT — QUESTION FOR JURY.

Where, from any proper view of the undisputed facts, the conclusion necessarily follows that plaintiff cannot recover, it is the trial court's duty to direct a verdict for defendant; but if reasonable minds might· fairly draw different conclusions as to the facts, and different inferences from the evidence in respect to alleged contributory negligence, such question is for the jury.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 337; Dec. Dig. § 142.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**2. CARRIERS (§ 347\*)—INJURY TO PASSENGERS—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.**

A local train, which plaintiff desired to take from a suburban station to P., was due to leave at 10:45 p. m. The train had been in the habit of switching before it reached such station; but, a new switch having been put in beyond the station, the switching was done there for the first time on the night of the accident. Plaintiff, approaching the track to take the train, saw it standing beyond the station, and, believing it was about to depart, started to run up the track to catch it, and was injured by the train backing toward the station without ringing the bell, blowing the whistle, or having any light or employé on the rear thereof. *Held*, that plaintiff was not negligent as a matter of law; the mere going or running on the track under such circumstances not being in itself contributory negligence.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1346, 1350–1386, 1388–1397, 1402; Dec. Dig. § 347.\*]

In Error to the District Court of the United States for the District of Oregon; Chas. E. Wolverton, Judge. ·

Action by Thomas Evans against the Southern Pacific Company. Judgment for defendant, and plaintiff brings error. Reversed, and remanded for new trial.

John M. Gearin, of Portland, Or., and G. E. Hayes and Latourette & Latourette, all of Oregon City, Or., for plaintiff in error.

W. D. Fenton, Ben C. Dey, and Kenneth L. Fenton, all of Portland, Or., for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge. Our impression at the argument of this case was that the judgment would have to be reversed, and a careful examination of the record confirms us in that view.

The action was brought by the plaintiff in error to recover damages for the loss of his leg, caused by the alleged negligence of the defendant railway company in backing over him, without a rear light or other warning, one of its local trains running between Portland and a small town called Oswego, situated about nine miles southerly of that city, on the night of September 25, 1909. The plaintiff had purchased a ticket from Portland to Oswego and return, on which ticket he rode from Portland to Oswego, arriving there in the afternoon, and in the evening, in attempting to catch the 10:45 and last train back to Portland, the accident happened.

About 1,300 feet north of Oswego, and between the latter place and Portland, was a station called Wilsonia, at which the railroad company had that day for the first time put in operation a switch, for the purpose of changing the position of the engine for the return trip to Portland. Theretofore the switching had always been done southerly of Oswego, and there was evidence given tending to show that the plaintiff was unaware of that change in the accustomed mode of operating the road. The record shows that Oswego is a small place of several hundred inhabitants only, and that on the east side of the railroad is an iron foundry, from which and its vicinity several

---

paths lead in the direction of Oswego and Wilsonia and across the railroad tracks, which paths people were accustomed to travel; and there was also evidence tending to show that, although there was a county road running along and parallel to the railway track between the two places, many people had for a long time been accustomed to walk along the railway track, instead of the county road, of which custom the railroad company was aware, and to which it had never made objection.

The evidence tended to show that the night in question was dark and cloudy, and that the plaintiff, with a companion named Emmett, started from the vicinity of the foundry to take the 10:45 train back to Portland, and in proceeding along one of the paths, discovering, by means of its side lights, the train at Wilsonia, concluded that it was there on its way to Portland, ran along the path leading towards Wilsonia, reached the railroad track, and ran or walked along it towards that station, for the purpose of catching the train; the plaintiff being about ten feet in advance of Emmett. After proceeding along the track a few hundred feet, the plaintiff was run over by the train, resulting in the crushing of his leg; the fact being that, instead of being on its way to Portland when it was at Wilsonia, it was there for the purpose of switching, and was, at the time of the accident, being backed to Oswego, the point of switching having that night for the first time been changed from southerly of Oswego to Wilsonia. There was evidence tending to show that the train was being backed without any outside light at its rear end, and that the bell was not rung, nor any other timely warning given the plaintiff of its approach.

The trial court held that there was sufficient evidence of negligence on the part of the railroad company to go to the jury for determination; but it held as a matter of law that the plaintiff was guilty of contributory negligence, and on that ground directed a verdict for the defendant company, which action of the court is the only ground of complaint here.

[1] It is undoubted law that if, from any proper view of the undisputed facts of a case, the conclusion necessarily follows that the plaintiff cannot recover, it is the duty of the trial court to direct a verdict accordingly, for in such case the court would, in the exercise of a sound judicial discretion, be compelled to set aside the verdict, if returned in the plaintiff's favor. Decisions to this effect are too numerous to require citation. It is just as well settled, however, that if reasonable minds may fairly draw different conclusions as to the facts, and different inferences from the evidence in respect to alleged contributory negligence, the determination of that question is for the jury, under appropriate instructions from the court. In Jones v. East Tennessee, etc., Railroad Co., 128 U. S. 443, 9 Sup. Ct. 118, 32 L. Ed. 478, Mr. Justice Miller, speaking for the Supreme Court, said:

"The evidence is embodied in the bill of exceptions before us, and we cannot agree with the Circuit Court that there was such a clear case of negligence on the part of the plaintiff as to justify the court in withdrawing the whole subject from the consideration of the jury. The plaintiff himself states that he was in the depot of the defendant on business; that the passenger platform was alongside the tracks, which ran between it and the

depot; that he passed out of the depot by the usual way, and was struck between the wall of the depot and the platform. He further says that the way he was going he could not see a train approaching from the east, because there was a car on the side track, and he had no warning of any approaching train, although he listened as he went out of the depot. There is also some evidence that there was so much noise about the place of exit from the depot that the sound of the advancing train could not be distinguished. On the other hand, there is some testimony to show that the plaintiff ran carelessly through the depot, that he knew the train was approaching, and that he might have guarded himself against it, if he had stopped at the exit of the depot long enough to have looked about him   But we think these are questions for the jury to determine. We see no reason, so long as the jury system is the law of the land, and the jury is made the tribunal to decide disputed questions of fact, why it should not decide such questions as these as well as others. There is nothing in a case in which it is conceded, fully and unreservedly, that the defendant company is in fault on account of the manner of running its trains, such as the high rate of speed and other careless matters mentioned by the court in its instructions, which should justify the court in refusing to submit to the jury the question whether the defendant company is relieved from the liability incurred by it, by reason of the acts of the plaintiff showing that, in some degree, he may not have been as careful as the most cautious and prudent man would have been. Instead of the course here pursued, a due regard for the respective functions of the court and the jury would seem to demand that these questions should have been submitted to the jury, accompanied by such instructions from the presiding judge as would have secured a sound verdict."

[2] In the case at bar it was shown without dispute that the first time the local train ever switched at Wilsonia, instead of its previously accustomed place, was on the occasion in question, and the testimony of some of the defendant's own witnesses tended to show that the train was backed from Wilsonia towards Oswego without any outside light on the rear of the train, and the plaintiff testified, among other things, that, when he went up on the train in the afternoon, the train proceeded a little further south and switched as it had always done on his previous visits; that when he and Emmett started to return they intended to take the train at Oswego, and started to go to that station; that they took a well-beaten path leading towards the railroad; that they saw the train at Wilsonia, and could see from the side lights and the engine that it was headed towards Portland, and thought it had already been to Oswego. Being asked to tell the jury what he did, and what he saw, and what occurred from the time he got on the railroad track, the witness answered and was questioned as follows:

"A. Well, we came right up on the track, and went right up the track till it hit me there and knocked me off. Mr. Fenton: I didn't hear. A. We went up the track until the train hit me. Q. Did you run? A. No, sir; we started to run, and we was going up the hill there. We had been running from the barn, and we was pretty well out of wind at that time. Q. You started to run? A. Yes, sir. We wasn't running at the time it hit me. Q. How fast were you going when the train hit you? A. As fast as I could walk. Q. As fast as you could walk? A. Yes, sir. Q. Now, did you hear any bell ring? A. No, sir. Q. Did you hear any whistle? A. None at all. Q. Well, was there any bell rung or any whistle sounded at that time? A. No, sir. * * * Q. Now state, was there anybody on the rear end of that train when you were struck? A. No, sir. Q. Was there any light there, or anything? A. Nothing at all. Q. Well, were you looking and listening? A. Yes, sir; I was looking straight ahead."

And the witness Emmett testified much to the same effect.

Unless it can be held—which we think cannot properly be done—that the mere going and rapidly walking or running on the company's track by the plaintiff in and of itself constituted contributory negligence, we regard it as clear that the evidence and attending circumstances were such as to have entitled the plaintiff to the submission of the question of his alleged contributory negligence to the jury under appropriate instructions.

The judgment is reversed, and the cause remanded to the court below for a new trial.