SHANK v. GREAT SHOSHONE & TWIN FALLS WATER POWER CO.

(Circuit Court of Appeals, Ninth Circuit.    June 12, 1913.)

No. 2,178.

1. COURTS (§ 352*)—FEDERAL COURTS—CONFORMITY TO STATE PRACTICE—IN-
VOLUNTARY NONSUIT.

Where the state law permits a court to grant an involuntary nonsuit
on the ground that the evidence with all the inferences to be drawn
therefrom would not sustain a verdict for the plaintiff, a federal court
may do likewise.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 926–932;  Dec.
Dig. § 352.*

Conformity of practice in common-law actions to that of state courts,
see notes to O'Connell v. Reed, 5 C. C. A. 594;  Nederland Life Ins. Co. v.
Hall, 27 C. C. A. 392.]

2. TRIAL (§ 165*)—NONSUIT—STATUTORY GROUNDS—INSUFFICIENCY OF EVI-
DENCE.

Under Rev. Codes Idaho 1908, § 4354, which provides that a judgment
of nonsuit may be entered by the court on motion of the defendant "when
upon the trial the plaintiff fails to prove a sufficient case for the jury,"
such a motion admits the existence of every fact which the evidence tends
to prove, or which could be gathered from any reasonable view of the
evidence, and the plaintiff is entitled to the benefit of all inferences in
his favor which the jury would have been justified in drawing from the
testimony.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 373, 374;  Dec. Dig.
§ 165.*]

3. ELECTRICITY (§ 19*)—INJURIES INCIDENT TO USE—CARE REQUIRED—AC-
TIONS—QUESTIONS FOR JURY.

Plaintiff was moving a haystacker along a highway, when the top came
in contact with the wires of defendant's high-power electric transmis-
sion line, and plaintiff was injured by the current which passed down a
cable on the stacker.   Plaintiff's evidence tended to show that the highest
point of the stacker was about 27½ feet from the ground; that hay-
stackers similar in construction and height were in general use in the
neighborhood, and had been since before defendant's line was built and
were frequently moved along the highways; that a bridge which plaintiff
was approaching was higher than the roadway on either side, and was
built before defendant's line was established; that, to pass over such
bridge with a structure like plaintiff's, it was necessary to pass under
defendant's wires at the place where the injury occurred; that the
lowest wire of defendant's line at that point was about 27 feet 3 inches
from the ground, and was lower than at any other point along the high-
way, which it followed; that by the standard of construction of such a
power line in that country, recognized by engineers and others in charge
of construction, the lowest wire should be from 30 to 33 feet above the
ground; that defendant's wires were not insulated, and were at the time
carrying a powerful current, dangerous to the life of any one who might
come in contact with it.   Held, that such evidence tended to show that
defendant had not performed its legal duty to use the highest degree of
care practicable to avoid injury to every one who might be lawfully in
proximity to the wires, and that the question should have been submitted
to the jury.

[Ed. Note.—For other cases, see Electricity, Cent. Dig. § 11;  Dec. Dig.
§ 19.*]

4. ELECTRICITY (§ 19*)—INJURIES INCIDENT TO USE—ACTIONS—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

Under the settled rule that, if reasonable minds may fairly draw different conclusions as to the facts or different inferences from the evidence with respect to a charge of contributory negligence the determination of that question is for the jury, the uncontradicted testimony of plaintiff that he had been informed that defendant's wires were 30 feet from the ground, and that he had previously moved his haystacker under the wires at different points without interference or contact, was at least sufficient to require the submission of the question of his contributory negligence to the jury.

[Ed. Note.—For other cases, see Electricity, Cent. Dig. § 11; Dec. Dig. § 19.*]

In Error to the District Court of the United States for the District of Idaho; Frank S. Dietrich, Judge.

Action at law by Jake M. Shank against the Great Shoshone & Twin Falls Water Power Company. Judgment for defendant, and plaintiff brings error. Reversed.

This is an action to recover damages for personal injuries received by the plaintiff by reason of a haystacker or derrick which he was moving along the public highway near the town of Buhl, in the state of Idaho, coming in contact with the power transmission wires of the defendant.

The derrick or haystacker had a base or foundation of wood about 14 feet square. The timbers forming the base or foundation were 6 by 8 inches, and 16 feet in length, projecting at the ends about a foot from the square base. In the center of the square base were two pieces of timber 4 inches by 6 inches, to which was attached an upright mast of wood about 22 feet in height. Across the top of the mast and connected therewith by a hinge was placed a boom about 40 feet long and about 12 or 14 inches in diameter. The boom was hinged to the top of the mast at a point on the boom about 13 feet from one end and about 27 feet from the other end. Extending above the boom, at the point where it was attached to the top of the mast, was a small upright timber about five feet long, over the top of which, and connected with the ends of the boom, ran a wire cable. This five foot upright timber extending above the top of the mast made the height of the mast, with the added upright, about 27 feet, and perhaps a few inches more. Affixed to the short end of the boom was a system of ropes and pulleys by means of which the short end of the boom was lowered and raised, as required to raise and lower the long end of the boom. To the long end of the boom was attached suitable tackle for lifting hay from the ground and placing it upon the stack. In operation the long end of the boom would often be raised to a greater height than the top of the center mast, when hay was being placed upon a high part of the stack. But with this arrangement of the mechanism we have nothing to do. The haystacker was not in operation at the time of the accident. It was being moved along the highway and the boom was secured in a horizontal position at the top of the mast, which, being about 22 feet in height, fixed the height of the horizontal boom at about 22 feet. With the boom in this horizontal position the highest point of the derrick was the top of the upright above the perpendicular mast, which was not to exceed 27 feet and 6 inches from the ground.

The general direction of the public highway over which the derrick or haystacker was being moved was east and west. Along and close to the north boundary line of this highway were strung the electric wires of defendant's high-power transmission line. At the point where the accident occurred, the road crosses a bridge over a ditch running diagonally across the road. Approaching this bridge, the roadway passes over to the northerly side of the right of way, the northerly side of the roadway passing under the wires of the defendant's high power transmission line, and the road then turning

in a southerly direction rises and passes over the bridge, crossing the ditch. This bridge is approximately about 16 feet wide, and to pass over it safely it was necessary to square the haystacker with the bridge. It was while approaching this bridge that the top of the derrick or haystacker came into contact with the defendant's high-power transmission wires.

The derrick or haystacker was being drawn by two teams of two horses each, all abreast. The plaintiff was driving one of these teams and an employé the other. When the derrick or haystacker had been drawn into position for crossing the bridge, the employé was at the head of the horses, and the plaintiff was on the south side of the derrick. The evidence tended to show that as the derrick or haystacker was being drawn, or was about to be drawn, onto the bridge, there was a near contact, or an actual contact, between the cable passing over the mast of the haystacker or derrick and the defendant's high-power transmission wires, and that the electric current passing down the cable, hanging down from the short end of the boom, struck the plaintiff, and he was severely injured.

The defendant's wires were not insulated, and it was admitted by the defendant that on the date of the accident it transmitted over and along its wires a strong and powerful current of electricity of about 23,000 volts for the purpose of furnishing light and power to a large number of persons, and for other purposes, and that this current of electricity was dangerous to the life of any human being who might come near or in contact with it.

The evidence tended to show that the bridge was built before the defendant's power line was established, and the eastern approach to the bridge was higher than the road either east or west of it. From an engineering standpoint it was not possible to change the bridge over the ditch to any great extent, the ditch being very flat at that point. At a point on the nearest pole to the east the lowest wire of the power line was 30.7 feet from the ground. At the nearest point to the west of the point of the accident the lowest wire was the same distance from the ground; while at the point of the accident the lowest wire was 27 feet and 6 inches from the ground, without any allowance for the sag of the wire at that point; the measurement being taken by triangulation. The sag of the wire would bring the wire down 2 or 3 inches lower, making the distance from the ground near the bridge, to the lowest wire, at the point of the accident, about 27 feet and 3 inches. For a distance of 4 or 5 poles west, and one pole east, the height of the lowest wire from the ground varied from 29½ feet to 31 feet. At no other point was the lowest wire as near the ground as at the point of the accident.

There was evidence tending to show that the standard for poles recognized by engineers and parties in charge of construction of power lines such as that maintained by the defendant, and in a country such as that in which defendant's line is located, is about 40 feet in length; that these poles would be sunk in the ground between 6 and 8 feet, sometimes 5 feet. Three wires are strung on these poles; one on top of the pole and two on the cross-arm 30 to 40 inches below. The top wire is neutral; the bottom wires are the electric power wires. All of these wires are placed on insulators, the top wire on a pin on top of the pole, and the two on the cross-arm on pins from 12 to 14 inches above the cross-arm. This standard of construction carries the lowest transmission wires from 30 to 33 feet from the ground.

The evidence tended to show, further, that in driving west along the roadway, and making the turn to pass over the bridge, it was necessary to pass under the wires of the defendant's transmission line at that point, and that it was impossible to go along the road and over the bridge without going under the wires.

The evidence tended to show, further, that at a point about 300 yards east of the place where the accident occurred the haystacker or derrick had been drawn into the roadway that morning, passing under the wires of the defendant's power line without contact; that at another point about 400 yards west of the place where the accident occurred the haystacker or derrick had passed under the wires of the defendant's power line some time before without contact, and the same thing had occurred at other times and at other

places; that plaintiff's haystacker or derrick was of the style in general use in that vicinity; that they were very common, had been seen in that vicinity since 1906, and were transported up and down the highways in moving them about from place to place.

At the close of plaintiff's testimony, the defendant moved for a nonsuit. The motion for a nonsuit was sustained by the court, and the action dismissed, on the following grounds:

(1) Because the evidence failed to show that the defendant company was guilty of any negligence causing the injuries received by the plaintiff.

(2) Because the evidence showed that the plaintiff was guilty of such contributory negligence as precluded his recovery.

Alfred A. Fraser, of Boise, Idaho, and W. P. Guthrie, of Twin Falls, Idaho, for plaintiff in error.

S. H. Hayes and J. F. Nugent, both of Boise, Idaho, for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge (after stating the facts as above). [1] 1. The order of the court granting defendant's motion for a nonsuit is assigned as error, on the ground that the court had no power to grant a peremptory nonsuit against the will of the plaintiff. The rule now established in the federal courts is this: If the state law permits a nonsuit where the evidence, with all the inferences to be drawn therefrom, would not sustain a verdict for the plaintiff, the federal court may do likewise, under the provisions of section 914 of the Revised Statutes of the United States. U. S. Comp. St. 1901, p. 684. Central Transp. Co. v. Pullman's Car Co., 139 U. S. 39, 40, 11 Sup. Ct. 478, 35 L. Ed. 55; Meeham v. Valentine, 145 U. S. 618, 12 Sup. Ct. 972, 36 L. Ed. 835; Coughran v. Bigelow, 164 U. S. 308, 17 Sup. Ct. 117, 41 L. Ed. 442; Russo-Japanese Bank v. National Bank of Commerce, 187 Fed. 80, 86, 109 C. C. A. 398.

[2] Section 4354 of the Revised Codes of Idaho (1908) is as follows:

"An action may be dismissed, or a judgment of nonsuit entered, in the following cases: * * *

"5. By the court, upon motion of the defendant, when, upon the trial, the plaintiff fails to prove a sufficient case for the jury."

Such a motion admits the existence of every fact in favor of the plaintiff, which the evidence tends to prove, or which could be gathered from any reasonable view of the evidence. Later v. Haywood, 12 Idaho, 78, 85 Pac. 494; Bank of Commerce v. Baldwin, 12 Idaho, 202, 85 Pac. 497. In such case the plaintiff is entitled to the benefit of all inferences in his favor which the jury would have been justified in drawing from the testimony. Kreigh v. Westinghouse & Co., 214 U. S. 249, 253, 29 Sup. Ct. 619, 53 L. Ed. 984; Sonnenberg v. S. P. Co., 159 Fed. 884, 886, 87 C. C. A. 64; Katalla Co. v. Johnson (C. C. A.) 202 Fed. 353, 355. In sustaining the motion of the defendant for a nonsuit, the court held in effect that the plaintiff had presented no evidence tending to show that the proximate cause of the injury to the plaintiff was the negligence of the defendant.

[3] The evidence, as heretofore stated, tended to show:

(1) That the highest point of plaintiff's derrick or haystacker at the time of the accident was about 27 feet and 6 inches.

(2) That derricks or haystackers similar in construction and height to the one which the plaintiff was moving at the time of the accident were owned by the farmers generally in that neighborhood, that they were frequently moved along the highways in that section of the country, and that they had been in common use in that vicinity since 1906, and prior to the construction of the defendant's power line.

(3) That the bridge which the plaintiff was approaching at the time of the accident was higher than the roadway either to the east or to the west of it; that this bridge was built before the defendant's power line was established.

(4) That the lowest wire of the defendant's transmission line was nearer the ground at the point where the accident occurred than at other points along the line. That the height of the lowest wire above the ground at other points along the line varied from 29 feet and 6 inches, to 31 feet. That at the place where the accident occurred the lowest wire was about 27 feet and 3 inches from the ground.

(5) That the standard of construction of such a power line in that country, recognized by engineers and others in charge of construction, carried the lowest transmission wire from 30 to 33 feet from the ground.

(6) That in traveling along the road and over the bridge, with a team hauling a structure such as the plaintiff was moving at the time of the accident, it was necessary to pass under the wires of the defendant's transmission line. That it was impossible to pass along the road and over the bridge with such a structure without passing under the wires of the defendant's transmission line.

(7) That the wires of the defendant's transmission line were not insulated.

(8) That the defendant at the time of the accident was transporting over and along its wires a strong and powerful current of electricity of about 23,000 voltage. That this current of electricity was dangerous to the life of any human being who might come near or in contact with it.

(9) That the plaintiff was injured by being struck with the electric current passing from the defendant's transmission wires at a point where the lowest wire of that line was about 27 feet and 3 inches from the ground.

What was the duty of the defendant to the plaintiff under the circumstances disclosed by this evidence? It was clearly its duty to have used every reasonable precaution to raise and keep its high power transmission wires sufficiently high above ground for the safe passage of such structures as the plaintiff was engaged in moving at the time and at the place he was injured. Such structures were common to that locality. It was not of unusual height and its passage along the highway and over the bridge was to be expected at any time.

In Joyce on Electric Law, par. 445, the rule is stated as follows:

"A company maintaining electric wires over which a high voltage of electricity is conveyed, rendering them highly dangerous to others, is under the duty of using the necessary care and prudence at places where others may have a right to go, either for work, business, or pleasure, to prevent injury."

In Giraudi v. Electric Imp. Co., 107 Cal. 120, 124, 40 Pac. 108, 109 (28 L. R. A. 596, 48 Am. St. Rep. 114), the plaintiff went upon the roof of a building to assist in securing signs which were in danger of being blown off by a storm then prevailing. He came in contact with an electric light wire placed along and near the roof by the defendant, and was injured thereby. It was held that the failure of the defendant to place its wires a sufficient distance above the roof to enable persons lawfully thereon to pass under them was sufficient proof of negligence to justify a verdict in favor of the plaintiff, and that the plaintiff was not guilty of contributory negligence in going on the roof. The court said:

"Defendant was using a dangerous force, and one not generally understood. It was required to use very great care to prevent injury to person or property. It would have been comparatively inexpensive to raise the wires so high above the roof that those having occasion to go there would not come in contact with them. Not to do so was sufficient proof of negligence to justify the verdict.

"If there was any excuse for not so locating the wires, it is on the claim that they were so covered that there was no danger in coming in contact with them. The accident itself proves that this was not sufficient res ipsa loquitur."

In Perham v. Portland Electric Co., 33 Or. 451, 478, 53 Pac. 14, 23 (40 L. R. A. 799, 72 Am. St. Rep. 730), Mr. Justice Bean reviewed the authorities upon this subject in passing upon a motion for a nonsuit, where the plaintiff's intestate had been killed by coming in contact with a high-power transmission wire on a railroad bridge. The court said:

"Electric companies, of course, are not bound to have perfect apparatus or perfect construction, but they are required to exercise a degree of care and prudence in the construction and maintenance of their wires commensurate with the danger; and where their wires are designed to carry a strong and powerful current of electricity, so that persons coming in contact with them are certain to be seriously injured, if not killed, the law imposes upon the company the duty of exercising the utmost care and prudence to prevent such injury; and whether such care has been exercised in a given case is ordinarily for the jury."

In the case of Fitzgerald v. Edison Electric Mfg. Co. (1901) 200 Pa. 540, 50 Atl. 161, 86 Am. St. Rep. 732, the rule is stated in even stronger terms:

"Wires charged with an electric current may be harmless, or they may be in the highest degree dangerous. The difference in this respect is not apparent to ordinary observation, and the public, therefore, while presumed to know that danger may be present, are not bound to know its degree in any particular case. The company, however, which uses such a dangerous agent, is bound not only to know the extent of the danger, but to use the very highest degree of care practicable to avoid injury to everyone who may be lawfully in proximity to its wires and liable to come accidentally or otherwise in contact with them."

In Ennis v. Gray, 87 Hun, 355, 34 N. Y. Supp. 379, the plaintiff, who was a roofer by trade, was injured while at work upon the roof of a building under authority of the owner thereof by coming in contact with the wires of the defendant, an electric light company, which were defectively insulated. With respect to the sufficiency of the evidence to go to the jury, the court said:

"The defendant was engaged in the business of supplying electricity for lighting purposes in houses and streets of the city, and considering the high voltage which it was necessary to carry over the wires, thus rendering the business in the highest degree dangerous unless handled with care and skill, we think that outside of any contractual relation a duty was created on the part of the defendant, not only towards the public generally who in the streets might be likely to come in contact with the wires, but also with respect to any individual engaged in a lawful occupation in a place where he was entitled as of right to be."

The court accordingly held that the evidence presented by the plaintiff tended to show that the defendant did not perform its duty, and that the trial court properly denied a motion to dismiss the complaint at the end of plaintiff's case.

In the case of Winegarner v. Edison Light & Power Co., 83 Kan. 67, 109 Pac. 778, 28 L. R. A. (N. S.) 677, the plaintiff was engaged in moving a house along the street of a city, and the comb or roof of the building was higher than the wires of the defendant. The plaintiff went upon the roof of the house and took hold of the wire in order to raise it up sufficiently high for the house to pass under. He was killed by the shock. The Supreme Court of Kansas said:

"There is evidence that the company had notice of the moving of this building. Whether it had notice of its passing the particular point where the accident occurred or not is not shown, but there is evidence tending to show that the moving of buildings was of so frequent occurrence that the defendant must have taken notice of such use of the streets. * * * If, from all the circumstances, the defendant had reason to apprehend that the building would be moved under the wires where the accident occurred, it was its duty, knowing its wires to be highly charged with electricity, to have such wires at the street crossing insulated, or to take such other precautions as might be necessary, to protect any one who might be liable to be upon such building from contact or injury from such wires."

It is not contended in the present case that defendant's wires should have been insulated at the place where the injury occurred. What is contended is that they should have been carried sufficiently high above the ground at that point to permit the safe passage over the highway and bridge of a structure such as the plaintiff was moving at the time he was injured, and that the standard of such safety was well known to the defendant.

It follows that we are of the opinion that the evidence introduced by the plaintiff tended to show that the defendant had not performed its legal duty as fixed by law, and that the question of defendant's negligence in this respect should have been submitted to the jury.

[4] 2. The defendant in error contends that the plaintiff was guilty of contributory negligence, and that this charge is supported by evidence that it was the long end of the boom carrying one end of the cable that came in contact with the electric wire; that, when the turn

was made to go upon the bridge, the long end of the boom swung out over the plaintiff's fence and under the electric wires of the defendant. From this statement of the evidence the defendant draws the conclusion that the contact between plaintiff's haystacker or derrick and the defendant's transmission wire occurred in one of two ways: Either the starting up of one or both of the teams to draw the structure across the bridge caused a sudden jerk, which threw the long end of the boom up against the wire, or the plaintiff voluntarily pulled the rope hanging from the butt end of the boom, drawing it down and the long end of the boom up against the wire. There is no evidence in the record upon which to base either of these inferences, but, if there was, it would be for the jury to draw the inference as an inference of fact, and not for the court to draw it as a conclusion of law. The evidence tended to show that the boom was secured at the top of the mast in a horizontal position, and there was no evidence to the contrary. In this position the entire horizontal length of the boom was about 22 feet from the ground. If it be contended that in this position any inference could be drawn that the long end of the boom came in contact with the transmission wire, it would have to be conceded that the transmission wire was suspended at that point at about 22 feet from the ground, which would tend to prove that the defendant was grossly negligent in maintaining its transmission wires at this point. But none of these inferences were for the court. They were questions of fact for the jury, and the mere statement of the defendant's contention with respect to this defense is sufficient to show that it cannot be maintained as a legal conclusion that the plaintiff was guilty of contributory negligence. But, treating the evidence in its broadest terms, the defense cannot be sustained.

The plaintiff testified that he had been informed that the wires of the power line were 30 feet high, and accordingly he had built his haystacker or derrick so that it could be moved under the wires of the power line without coming in contact with them. He also testified that just prior to the accident he had moved the derrick or haystacker under the wires of the defendant at a point about 300 yards east of the point where he was injured; that it had been necessary for him to do this in turning from a field into the road along which he was proceeding at the time of the accident. He also testified that in doing so he passed straight underneath the wires, and that he had had no difficulty in moving the derrick or haystacker under the wires at that point.

The plaintiff also testified that on several prior occasions the derrick or haystacker had been moved under the wires of the power line at different points along that highway, and that at all such points the wires of the power line had been high enough to permit the derrick or haystacker to pass beneath without interference or contact. With this experience and information, did not the plaintiff have the right to expect that the lowest of defendant's transmission wires would be at least 30 feet from the ground at all points along the highway, whether near or adjacent to the crossing of bridges or along the level highway?

As said by Judge Cooley in Detroit, etc., Ry. Co. v. Van Steinburg, 17 Mich. 99, 119:

"If the danger depends at all upon the action of any other person under a given set of circumstances, the prudence of the party injured must be estimated in view of what he had the right to expect from such other person, and he is not to be considered blamable if the injury has resulted from the action of another which he could not reasonably have anticipated."

Whether in this case the plaintiff had the right to expect that the lowest of defendant's wires would be at least 30 feet from the ground at all points along the highway would seem to have been a natural and reasonable expectation from which a reasonable and fair-minded man might draw the conclusion that the plaintiff was not at fault. The fact that a fair-minded man might also draw the other conclusion would not justify the court in taking the case from the jury. It is a question of fact, and it is well settled that if reasonable minds may fairly draw different conclusions as to the facts, and different inferences from the evidence with respect to a charge of contributory negligence, the determination of that question is for the jury, under appropriate instructions from the court. Jones v. East Tennessee, etc., Ry. Co., 128 U. S. 443, 445, 9 Sup. Ct. 118, 32 L. Ed. 478; Dunlap v. N. E. Ry. Co., 130 U. S. 649, 652, 9 Sup. Ct. 647, 32 L. Ed. 1058; Evans v. S. P. Co. (C. C. A.) 202 Fed. 160, 162.

In Railroad Co. v. Stout, 84 U. S. (17 Wall.) 657, 663 (21 L. Ed. 745), Mr. Justice Hunt, speaking for the Supreme Court, and stating the reason for this rule and its purpose in the determination of justice, said:

"Upon the facts proven in such cases (cases where the proof is clear and certain), it is a matter of judgment and discretion, of sound inference, what is the deduction to be drawn from the undisputed facts. Certain facts we may suppose to be clearly established from which one sensible, impartial man would infer that proper care had not been used, and that negligence existed; another man equally sensible and equally impartial would infer that proper care had been used, and that there was no negligence. It is this class of cases and those akin to it that the law commits to the decision of a jury. Twelve men of the average of the community, comprising men of education and men of little education, men of learning and men whose learning consists only in what they have themselves seen and heard, the merchant, the mechanic, the farmer, the laborer; these sit together, consult, apply their separate experience of the affairs of life to the facts proven, and draw a unanimous conclusion. This average judgment thus given it is the great effort of the law to obtain. It is assumed that 12 men know more of the common affairs of life than does one man, that they can draw wiser and safer conclusions from admitted facts thus occurring than can a single judge."

We are of the opinion that the question whether the defendant was guilty of negligence, and, if so, whether the plaintiff was guilty of contributory negligence, were questions which the plaintiff was entitled to have submitted to the jury with proper instructions.

Judgment reversed, with instructions to grant a new trial.