No. 19,279.

FLORENCE ESTELLA WADE, *Appellant*, V. THE EMPIRE DISTRICT ELECTRIC COMPANY, *Appellee.*

SYLLABUS BY THE COURT.

1. ELECTRIC WIRES—*Suspended Over Highway—Highest Degree of Care Required of Electric Companies.* Electric companies that suspend wires charged with a high voltage of electricity over or along the highway are required to exercise the highest care in constructing and maintaining their poles and wires so as to avoid injury to those using the highway for work, business and pleasure.

2. SAME—*Moving Mining Derrick—Death of Workman—Evidence Did Not Show Contributory Negligence as a Matter of Law.* A workman who was moving a mining derrick along a highway, a lawful and recognized use, found his passage obstructed by wires of the size and appearance of those used in telephone service suspended about nineteen feet above the ground, while the derrick he was moving extended about a foot higher. To effect a passage he climbed the derrick in order to lift the wires, after being warned by a fellow workman to be careful, and while lifting the wires was electrocuted. In an action to recover for his death, it is held that the testimony shows a *prima facie* case of negligence on the part of the electric company, and, further, under the circumstances as shown by the testimony the workman can not be charged with contributory negligence as a matter of law in climbing the pole and endeavoring to lift the wires over the top of the derrick.

Appeal from Cherokee district court; EDWARD E. SAPP, judge. Opinion filed March 6, 1915. Reversed.

*C. A. McNeil, C. B. Skidmore, E. V. McNeil,* all of Columbus, and *F. B. Wheeler,* of Pittsburg, for the appellant; *John Marshall,* of Topeka, of counsel.

*William F. Sapp, Andrew S. Wilson,* both of Galena, and *A. E. Spencer,* of Joplin, Mo., for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: Florence Estella Wade brought this action against The Empire District Electric Company to recover damages for the death of her husband, John

Wade, because of the alleged negligence of the company. To her evidence the court sustained a demurrer, and being overruled in her motion for a new trial she appeals.

Plaintiff, basing her action upon the statutory provisions of the state of Missouri, alleged, substantially, that John Wade was by occupation a mover of houses and mining derricks; that on September 17, 1913, while engaged in moving a derrick on a highway from a place in Jasper county, Missouri, known as Tan Yard Hollow, to Galena, Kan., he came in contact with certain uninsulated and heavily charged electric wires owned and operated by the defendant, and was electrocuted; that the defendant was negligent in not having the wires insulated and in permitting them to be improperly arranged and hung so low over the highway that a person engaged in a legitimate business and making a proper and common use of the highway would come in contact with them; and that because of this negligence her husband came to his death. She further alleged that the highway was a public one and had been so used for more than five years, and that during that time many derricks, similar to the one with which the deceased was working, had been moved along the highway. Plaintiff also alleged that the derrick, when loaded upon the wagon, was about twenty-one feet high; that the wires of defendant were only about nineteen feet above the ground; that her husband, not knowing that the wires carried a high voltage of electricity and were dangerous, climbed the derrick for the purpose of lifting the wires up and over it, and while lifting them he slipped and fell upon the wires, receiving an electric shock which caused his death. Damages in the sum of $10,000 were asked. To plaintiff's petition the defendant pleaded contributory negligence. On the trial of the case evidence was offered tending to prove that the height of the derrick, as loaded upon the wagon, was about twenty-one feet; that the wires were about

nineteen or twenty feet above the ground—some witnesses placed them as low as seventeen feet—and therefore were at least from one to two feet lower than the top of the derrick; and that the wires carried a current of electricity of about 5500 volts. There was some evidence of the impracticability of insulating the wires and evidence that it could be done at an expense of forty cents a foot, and it was further in evidence that Wade asked one of the men who was with him to climb the derrick and lift the wires, but he refused, and Wade then climbed the derrick for that purpose. As he was climbing it he was cautioned by his brother to be careful, it appears, and he replied that he had handled hundreds of such wires. Testimony was introduced that after Wade reached the top of the derrick he lifted one wire, then asked that the derrick be moved ahead a little to the next wire, and he took hold of that wire, but it was drawn so tight he could not lift it, and he asked them to back up, and as they did so and while he was lifting that wire they heard him exclaim, "Oh," and, looking up, they saw him lying on the wires apparently lifeless. In the course of three or four minutes, it appears, the wagon and derrick were moved and Wade fell to the ground, and was then found to be dead. Efforts made to resuscitate him were unavailing. It was shown that Wade had been engaged in moving derricks and houses for over twelve years in that region and that many wires were strung there. Evidence was also offered tending to show that the wires in question were about the size of telephone wires, many of which were strung along and over the highway; that there was nothing about them to show that they were heavily charged with electricity; and, further, that Wade was uneducated and had given no attention to the study of electricity, and was ignorant of the dangers of the electric current. Defendant demurred to the evidence of the plaintiff, and the court sustained the demurrer on the ground that Wade was guilty of contributory

negligence.   Plaintiff then moved for a new trial, and this being denied she now appeals.

It is here complained that the trial court committed error in sustaining the demurrer to plaintiff's evidence, in holding as a matter of law that Wade was guilty of contributory negligence.   Electric companies that use the highways and employ so dangerous an agency as electricity for their own private advantage are required to exercise the highest care in constructing and maintaining their poles, wires and appliances so as to avoid injury to those using the highway for work, business or pleasure.   (*Railway Co. v. Gilbert,* 70 Kan. 261, 78 Pac. 807, and cases cited.)   In *Winegarner v. Edison,* 83 Kan. 67, 109 Pac. 778, it was decided that:

"It is the duty of an electric light and power company having wires charged with a high voltage of electricity suspended upon poles across a street in a city, upon which street the moving of a building of greater height than the wires is reasonably to be anticipated, to insulate the wires at such crossing or to take such other precautions as are necessary to protect any person who is liable to be upon such building and to be brought in contact with such wires."   (Syl.)

In that case a recovery was sought for the death of a house mover who came in contact with uninsulated wires that were strung across a street about eighteen or twenty feet from the ground. The house which they were moving along the street was higher than the wires, and the deceased went up on the house to attend to the wires, and he either seized or fell across the wires, which were charged with 2300 volts, and his death was instantaneous.   This court approved an instruction given on the theory stated, and added that the trial court "submitted to the determination of the jury, as a question of fact, whether under all the evidence in the case the defendant was guilty of negligence, and whether the deceased was guilty of contributory negligence, and by its instructions told them that if under all the facts of the case persons were likely to come in contact with

30—94 KAN.

these wires, carrying the high voltage shown by the evidence, the defendant was under obligation to have the wires insulated so that injury would not result therefrom. If, on the other hand, the deceased knew of their dangerous character, and so knowing purposely came in contact with the wires, he was guilty of contributory negligence." (p. 73.) The defendant in using wires carrying a dangerous current was bound to know the extent of the danger, and it being the duty of the defendant to exercise the utmost care practicable to prevent injury to those who rightfully and lawfully pass along the highway where the wires cross by insulation or the taking of such other precautions as are reasonable and practicable it was incumbent on the defendant to take them. Some of the witnesses said that the insulation of these high-voltage wires would be so expensive as to be prohibitive. Others testified that the wires could be insulated at the crossing without great expense as it could be done for forty cents a foot. Whether it is practicable to insulate even at crossings is a question upon which persons appear to differ. It has been held, however, that a corporation maintaining dangerous electric wires will not escape liability on the ground of the expense of exercising a reasonable care by insulation or otherwise to prevent accidents reasonably to be apprehended by those lawfully coming near the wires. (*Braun v. Buffalo General Electric Co.*, 200 N. Y. 484, 94 N. E. 206, 34 L. R. A., n. s., 1089.) In a case where wires were strung across a highway and one who was moving a hay derrick came in contact with the wires and received injury the matter of expense of taking precautions for the protection of travelers was under consideration and the court held that:

"It would have been but a small item of expense to defendant to have placed its wires high enough above the road to have eliminated all probability of danger to persons traveling on the highway, and, if it neglected this precaution to the injury of a citizen, the courts will not search for technical reasons to protect it from the

consequences of its carelessness." (*Greenwood v. Eastern Oregon Power Co.*, 67 Ore. 433, 442, 136 Pac. 336.)

The highway in question is in a mining district and the moving of derricks and mining rigs of varying heights along the highway is common. Many of these structures, as well as houses, so moved are more than nineteen feet high, which is approximately the height of the wires in question, and so whether the defendant should have anticipated that a person following his usual and rightful occupation might accidentally or otherwise come in contact with the dangerous wires is a question upon which the parties divide. In a case arising, as did the present one, from a derrick having come in contact with electric wires the court said:

"It was clearly its duty to have used every reasonable precaution to raise and keep its high power transmission wires sufficiently high above ground for the safe passage of such structures as the plaintiff was engaged in moving at the time and at the place he was injured. Such structures were common to that locality. It was not of unusual height and its passage along the highway and over the bridge was to be expected at any time." (*Shank v. Great Shoshone & Twin Falls Water Power Co.*, 205 Fed. 833, 837, 124 C. C. A. 35.)

In *Winegarner v. Edison*, 83 Kan. 67, 109 Pac. 778, it was said that:

"If from all the circumstances the defendant had reason to apprehend that the building would be moved under the wires where the accident occurred, it was its duty, knowing its wires to be highly charged with electricity, to have such wires at the street crossing insulated, or to take such other precautions as might be necessary to protect anyone who might be likely to be upon such building from contact with or injury from such wires." (p. 73.)

It is said to be practicable to place these dangerous wires at such a height as would allow the passage of derricks and like structures and that many of the high-voltage wires have been so placed. In view of

the high degree of care required of those transmitting this dangerous agency, the position and the condition of the wires and of the use made of the highway it became a question of fact for the determination of the jury whether or not the defendant was negligent. Other authorities which tend to support the view that there was a basis for submitting the question of the defendant's negligence to the jury are: *Rambo v. Electric Co.,* 90 Kan. 390, 133 Pac. 553; *Leavenworth Coal Co. v. Ratchford,* 5 Kan. App. 150, 48 Pac. 927; *Card v. Wenatchee Valley Gas & Elec. Co.,* 77 Wash. 564, 137 Pac. 1047; *Mangan's Adm'r v. Louisville Electric Light Co.,* 122 Ky. 476, 91 S. W. 703, 6 L. R. A., n. s., 459, 29 Ky. Law Rep. 38; *Fitzgerald v. Edison Electric Co.,* 200 Pa. St. 540, 50 Atl. 161, 86 Am. St. Rep. 732; *Geismann v. Missouri-Edison Electric Co.,* 173 Mo. 654, 73 S. W. 654; *Ryan v. St. Louis Transit Co.,* 190 Mo. 621, 89 S. W. 865, 2 L. R. A., n. s., 777; *Byerly v. Light, Power & Ice Co.,* 130 Mo. App. 593, 109 S. W. 1065; *Lewis' Adm'r v. Bowling Green Gas Light Co.,* 135 Ky. 611, 117 S. W. 278, 22 L. R. A., n. s., 1169, and Note; *Clements and Wife v. Electric Light Co.,* 44 La. Ann. 692, 11 South. 51, 16 L. R. A. 43, 32 Am. St. Rep. 348; *Hebert v. Lake Charles Ice, Light & Waterworks Co.,* 111 La. 522, 35 South. 731, 64 L. R. A. 101, 100 Am. St. Rep. 505, and Note.

Although the negligence of defendant is discussed at considerable length by counsel for both parties the trial court appears to have held that the evidence produced made a *prima facie* case of negligence against the defendant. Its written opinion, which is included in the abstract, proceeds upon the theory that there was some evidence to sustain the charge that the defendant was negligent but that a recovery could not be had because plaintiff's testimony showed that Wade was himself guilty of negligence. The court said:

"In this case when the deceased moved up there he must have seen that the wires had been insulated; that they were bare in a great many places. This instead

of being a notice of safety, was a warning of danger, and if, under those circumstances he lifted those wires out of the place in which they had been placed and were being used, for a distance of two or three or four feet, and then lifted another wire of the same character, and these wires came in contact with each other, he was guilty of negligence which would preclude him from a recovery in this case."

On the evidence can it be said as a matter of law that Wade was guilty of contributory negligence? If the facts are not in dispute and but one inference can be drawn from them the question of deceased's negligence can be decided by the court. If the facts are disputed the negligence is a question of fact for the jury, and even if the facts are undisputed, but different inferences may be drawn from them the deceased's negligence is still a question for the jury and not for the court. If the question whether Wade acted as a reasonably prudent man would under the circumstances in handling the wires in the effort to move the derrick along the highway is one on which reasonable minds might differ it should have been submitted to the jury under appropriate instructions. (*K. P. Rly. Co. v. Pointer*, 14 Kan. 37; *Beaver v. A. T. & S. F. Rld. Co.*, 56 Kan. 514, 43 Pac. 1136; *Kemp v. Railway Co.*, 91 Kan. 477, 138 Pac. 621.) If Wade knew or was chargeable with knowledge that the wires were carrying a deadly or dangerous current of electricity and deliberately took hold of them he would be regarded as negligent and must take the consequences of his negligence. In support of the ruling of the court it is urged that Wade had been engaged in moving houses and derricks in that vicinity for more than twelve years, where defendant had many light and power wires strung along and over the streets and highways of the district and was necessarily familiar with its system. It is said that Wade had an opportunity to know that many of the wires in the district carried dangerous currents, and also that he must have observed the difference between telephone and power

wires. When he came to the wires in question Griggsby, who was an employer and not one of the moving crew and who had volunteered to assist by lifting other wires that crossed the road, declined to go up and lift these wires over the derrick, and Wade then stated that he would do it, and at that time a brother of Wade, who was present, admonished him to be careful. Wade responded that he had handled such wires many times, or hundreds of times, as some witnesses expressed it. It is further said that the wires being bare, or practically so, was some warning of danger, and that the danger was open and apparent to any ordinary observer, and yet Wade voluntarily lifted them with his bare hands. It is, therefore, insisted that he must have been conscious of the danger and that his action was necessarily negligent. On the other hand, it is plausibly urged that while Wade had been moving houses and derricks for a number of years in the district where wires were strung by the defendant, the evidence tends to show that he did not believe or know that these wires were dangerous. There is nothing to show that he had ever received a shock or that he had previously handled hot or dangerous wires. He was an uneducated man, without electrical training or experience, and certainly he acted as if he believed that these wires were of low voltage and could be safely handled. The wires were of the size and appearance of telephone wires, and upon that trip and just a short time before he and his crew had come in contact with two sets of wires which were strung across the road, and they were wires of the same size as the ones in question, and they had been lifted over the derrick without injury just as Wade undertook to lift these. They were telephone wires, and it is well known that the current ordinarily carried on such wires does not make contact with them dangerous. Why may Wade not have assumed that these were telephone wires, and under the circumstances can it be said that he did not exercise the care which men of ordinary prudence

of his class who are unskilled in electricity would have exercised? Another thing that may have influenced him was the fact that he was entitled to use the highway for moving derricks. It was a legitimate use and had been continued so long in that vicinity that those stringing light and power wires were bound to recognize the use and provide for the safety of those making such use of the highway. It appears, too, that some of the large high-power wires, which were about twenty-five feet from where Wade was killed, were five or six feet higher than these small wires, and some others near that place were thirty feet above the ground. Is it an unreasonable inference that Wade supposed that defendant had taken precaution for the safety of those engaged in moving derricks and houses and had placed the dangerous wires high enough to permit the passage of such structures without obstruction or danger? May this not have been his meaning when he said to his brother that he had·lifted hundreds of wires without injury, and does not the expression indicate that he regarded the wires to be such as he had previously handled with safety? While Griggsby declined to lift the wires it may be said that he was under no obligation to do any work there. Besides, he testified that while he had said that he did not care to lift the wires that he did not say to Wade or any one else that he was afraid to go up and lift them. There is testimony that telephone wires had been repeatedly lifted by Wade, but none that he had ever handled those carrying a high voltage. A different rule is applied in the case of injury to persons untrained in electricity and those who have had experience. In *Rambo v. Electric Co.*, 90 Kan. 390, 133 Pac. 553, where an experienced man climbed a pole near which both electric light and telephone wires were strung, but all of the electric light wires were not properly insulated, the workman undertook to pass between the electric light wires and came in contact with a defectively insulated wire and was killed. It was contended that the court should have instructed

the jury that the workman was guilty of contributory negligence, but it was held that although the workman had experience in electricity and had failed to take all available measures to insure his safety, beyond doubt the question, after all, was whether or not a reasonably prudent man would have acted as he did act. It was said that fair-minded men might disagree as to the propriety of his action, and, therefore, it became a question for the jury to determine, and it was further held that he could not be charged with contributory negligence as a matter of law because he had not asked to have the electric current turned off until his work was done. Here, Wade was inexperienced in electricity. Some of the wires were harmless and some of them were dangerous, and as the wires which killed him were similar in size and appearance to telephone wires, which were not dangerous, the question whether they were carrying a heavy or deadly current was not apparent to ordinary observation. Fair-minded men might differ as to whether a person of ordinary prudence would have done as Wade did, and hence it can not be determined as a matter of law that he was guilty of contributory negligence. Some of the authorities sustaining this view are *Winegarner v. Edison,* 83 Kan. 67, 109 Pac. 778; *Greenwood v. Eastern Oregon Power Co.,* 67 Ore. 433, 136 Pac. 336; *Giraudi v. Electric Imp. Co.,* 107 Cal. 120, 40 Pac. 108, 28 L. R. A. 596, 48 Am. St. Rep. 114; *Shank v. Great Shoshone & Twin Falls Water Power Co.,* 205 Fed. 833, 124 C. C. A. 35; *Fitzgerald v. Edison Electric Co.,* 200 Pa. St. 540, 50 Atl. 161, 86 Am. St. Rep. 732; *Card v. Wenatchee Valley Gas & Elec. Co.,* 77 Wash. 564, 137 Pac. 1047; *Lewis' Adm'r v. Bowling Green Gas Light Co.,* 135 Ky. 611, 117 S. W. 278, 22 L. R. A., n. s., 1169, and Note.

The fact that one of the four wires had at some time been covered and the insulation had mostly worn off was, in a sense, a warning of danger to one who observed it, but it appears that the wire which had once been insulated was lifted by Wade without injury.

Wade v. Electric Co.

There is no question but that there is testimony in the record from which an inference of a want of ordinary care by Wade might have been drawn by a jury, and if the jury had made a finding that Wade had been guilty of contributory negligence there would be no difficulty in finding a basis for it in the evidence. The evidence, however, fairly admits of inferences that Wade did not have knowledge of the danger, and, further, that the danger was not so apparent that it can be said, as a matter of law, that a person of ordinary prudence would not have lifted the wires as he undertook to do. What was in the mind of the deceased at the time can not be definitely known, and there is but little in the testimony which satisfactorily shows how he regarded the wires or what actuated him in lifting them. "It has often been said that where the injured person is dead wider latitude should be allowed to the jury in passing on this question of contributory negligence, and this case seems to come well within those where it has been decided on meager evidence that the care of the deceased person was a question for the jury." (*Braum v. Buffalo General Electric Co.*, 200 N. Y. 484, 496, 94 N. E. 206, 34 L. R. A., n. s., 1089.)

It is contended and there is some basis for the inference that the wires could have been safely lifted if one had not been brought in contact with another, and that the bringing of the wires in contact, or the making of a short circuit, was an accident, but the decision upon the question of contributory negligence is placed on the broad ground that the case comes within the rule often stated that where the evidence is such that different minds may draw different inferences as to the reasonableness and care of the conduct of a person the court can not take the case from the jury and determine, as a matter of law, that the person was negligent.

The judgment of the district court will therefore be reversed and the cause remanded for a new trial.

PORTER, J.: dissents.

MARSHALL, J., not sitting.