No. 20,243.

FLORENCE ESTELLA WADE, *Appellee*, v. THE EMPIRE DISTRICT ELECTRIC COMPANY, *Appellant*.

### SYLLABUS BY THE COURT.

1. ELECTRIC WIRES—*Crossing Public Highway—Moving Derrick—Contact with Wire—No Variance Between Allegations and Proof.* In an action to recover for the death of one who was killed by coming in contact with heavily charged electrical wires of the defendant which crossed a public highway, the petition alleged that deceased, who was moving a derrick along the highway, climbed on the derrick in order to life the wires, and that while so engaged he slipped and fell upon and thus came in contact with the wire which caused his death. There was no evidence to show that he slipped or fell; the witnesses, who stood upon the ground twenty feet below, thought he had lifted one

Wade v. Electric Co.

wire and was on his knees attempting to lift another when they heard him groan and discovered that he was unconscious. *Held*, the slight variance between the proof and the allegation of the petition was not fatal, and it might have been covered by an amendment to the petition, even after judgment, to conform to the proof.

2. SAME—*Law of Case Determined on Former Appeal.* The law as declared when the case was here before (*Wade v. Electric Co.*, 94 Kan. 462, 147 Pac. 63) is held to be the law of the case upon the second trial, the facts being substantially the same, and it is held, therefore, that the deceased was not as a matter of law guilty of contributory negligence.

3. SAME—*Special Findings—Do Not Show Passion and Prejudice of Jury.* Where a jury by their special findings indicate that they have discredited the uncontradicted testimony of witnesses, the trial court may either set aside the finding or may consider the fact in determining whether the verdict is the result of such prejudice or passion as to warrant a new trial, but where the verdict has been approved by the trial court, it will be assumed that the court did not regard the conduct of the jury as evidence of such passion or prejudice as would warrant a new trial.

4. SAME—*Evidence of Expert Witnesses—Not Conclusive.* The testimony of expert witnesses that it is not good practice to insulate electric wires carrying over 2500 volts which cross a public highway on poles twenty feet high, where it is conceded that the wires were insulated when first placed in position but the insulation had worn off, is not conclusive evidence of the fact. Expert witnesses determine nothing. They testify to their opinion as to facts and conditions. The jury determine what are the facts.

5. SAME—*Instruction as to Duty of Defendant in Maintaining Its Wires.* An instruction which in substance charged that if under certain conditions stated defendant should reasonably have anticipated that persons using a public highway might come in contact with its electric wires, and it failed to use the highest degree of care to insulate the same, it was negligent, is held not to impose too high a duty upon the defendant, when considered with other instructions which charged that it was the duty of the defendant to keep its wires insulated, "or if not insulated, then to place and keep them in a position and location where they will be beyond the reach of all the common ordinary traffic and travel."

6. SAME. Other instructions considered and held not to be objectionable on the ground that they assume the existence of controverted facts.

7. SAME—*Trespassing—Instruction Rightly Refused.* A requested instruction that deceased was a trespasser, or at least a mere licensee, of defendant when he undertook to move the wires and enable the derrick to pass under them, was rightly refused.

8. SAME—*Instructions.* Other instructions requested by the defendant considered and held properly refused.

9. SAME—*Choosing a Safer Method of Passing Under the Wires—Contributory Negligence.* The fact that deceased could have moved the derrick under the wire by lowering and hauling the derrick in a horizontal position was a fact for the jury to consider in determining whether under all the circumstances he was guilty of contributory negligence; but a special finding that he could have escaped injury by adopting the safe way did not authorize the court to render judgment on the finding in favor of defendant on the ground that as a matter of law the deceased was guilty of contributory negligence.

Appeal from Cherokee district court; JAMES N. DUNBÅR, judge. Opinion filed June 10, 1916. Affirmed.

*William F. Sapp, Andrew S. Wilson,* both of Galena, and *Arthur E. Spencer,* of Joplin, Mo., for the appellant.

*C. A. McNeill,* and *Maurice McNeill,* both of Columbus, for the appellee.

*Henry C. Sluss,* of Wichita, for The Kansas Gas & Electric Company.

*J. I. Shepard,* of Ft. Scott, for The State Federation of Labor.

*C. S. Walden, W. N. Andrews,* both of Joplin, Mo., *Hugh J. Smith,* and *R. J. Higgins,* both of Kansas City, as *amici curiæ.*

The opinion of the court was delivered by

PORTER, J.: At the first trial of this case the district court sustained a demurrer to plaintiff's evidence. On appeal from that ruling the judgment was reversed and the case remanded for a new trial. (*Wade v. Electric Co.,* 94 Kan. 462, 147 Pac. 63.) The case has been tried a second time, resulting in a verdict and judgment in plaintiff's favor for $8000, from which judgment this appeal was taken.

The plaintiff brought the action to recover damages for the death of her husband, John Wade, on account of the alleged negligence of the defendant company. John Wade was by occupation a mover of houses, machinery and articles of like character. On September 17, 1913, while engaged in moving a derrick along the highway from a place in Jasper county, Missouri, to Galena, Kan., he came in contact with certain electric wires belonging to the defendant, and was electrocuted. Two grounds of negligence are charged: first, in not

having the wires insulated; second, in permitting them to be too low over the highway.

The derrick was twenty feet high and about twelve feet square. The four corner posts were six by six. It was loaded on two trucks or wagons which raised it from eight to twelve inches and made it extend in the air from the ground, twenty-one feet. The owners of the derrick employed John Wade and his brother, Sam Wade, to move it. Twice before reaching the place where Wade was killed it was found necessary to remove telephone wires to allow the derrick to pass under them. At both these places Grigsby, who was one of the owners of the derrick, climbed on top of it and lifted the wires over. Afterwards they reached the wires of the defendant company, which were strung across the road at a height of twenty feet and at right angles to the road. Adjoining the road on the west side the wires were supported by what is called a four-post construction. Four poles were set in the ground so that they formed a square. The purpose of the four-post structure, which had been in existence since 1910, was to give greater strength at a point where the wires turned at right angles, and to prevent the weight and strain due to contraction from pulling down the support. There was a difference in the construction of the poles and the manner of supporting the wires from that used in the construction and support of the telephone wires which Grigsby had raised. Larger wires and larger and different kinds of glass insulators are used on the poles of power lines. When the parties reached the wires of the defendant the derrick was stopped within a few inches of the obstruction, and Wade asked Grigsby to go up and lift the wires, but he refused. Wade then asked Summers, another man assisting in the work, to go up and lift the wires, and he likewise refused. Wade then said that if some one would drive his team he would lift the wires. When he started up on the derrick, his brother cautioned him, saying: "Look at them; be careful what you do," and in reply John said: "I have raised hundreds of them," and climbed to the top of the derrick. During the time he was raising the wires he directed the men below to drive forward and back, the wires being too far from the derrick or too close to be raised. He had reached down and raised the first

24—98 KAN.

wire and placed it across the derrick, and was on his knees attempting to raise the second wire when he received the shock which killed him. Mr. Boughton, one of the owners of the derrick, who was present at the time of the accident, was called as a witness for the plaintiff. He testified: "When we came to the wires on that day Mr. Wade and Grigsby and the balance of us knew they were not like the wires we had previously passed under; we knew they were the wires of the Empire District Electric Company; we knew those wires carried electricity." Summers and Grigsby both testified that they refused to go up on the derrick because they knew the wires were those of the electric company and were dangerous. Sam Wade, brother of the deceased, testified that he knew the company furnished light, heat and power, and that these wires carried electricity for large separating plants; also that when his brother asked the others to go up and handle the wires they said they "did n't like to." The deceased had been engaged actively in moving houses, machinery and derricks for ten years in the distrct where the defendant had from 150 to 160 miles of wires crossing the highways.

There is a contention that a demurrer to the evidence should have been sustained because of the absence of any testimony to support the averment of the petition that John Wade took hold of the wires preparatory to lifting them over the derrick and in doing so slipped and fell, and thus came in contact with the wires that killed him. It is said no witness testified that he slipped and fell. The contention borders upon the technical. The witnesses stood upon the ground, and none of them could tell the exact manner in which Wade came in contact with the wires. It was conceded that he was handling them in some way for the purpose of getting them over the derrick. The slight variance between the proof and the statement of the petition occasioned no possible prejudice to defendant because its claim of contributory negligence was not strengthened by the evidence showing the facts; and, besides, upon request the trial court would have allowed the petition to be amended to conform to the proof even after judgment.

When the case was here before we held it was error for the trial court to sustain the demurrer to the evidence and to rule as a matter of law that Wade was guilty of contributory negli-

gence. Notwithstanding the former decision much of defendant's brief is based upon the contention that plaintiff's own evidence shows that Wade was guilty of contributory negligence, and we are again urged to hold that as a matter of law because of his negligence the plaintiff can not recover. It is suggested that in view of the common knowledge in regard to the wires and business of the defendant, it seems "absurd" to say that John Wade was not also familiar with the wires and with the danger of attempting to handle them. Webster defines "absurd" as "obviously and flatly opposed to manifest truth; inconsistent with the plain dictates of common sense; logically contradictory; nonsensical; ridiculous." The evidence of the plaintiff was substantially the same at both trials. In the former opinion, Mr. Chief Justice Johnston, speaking for the court, said:

"If the question whether Wade acted as a reasonably prudent man would under the circumstances in handling the wires in the effort to move the derrick along the highway is one on which reasonable minds might differ it should have been submitted to the jury under appropriate instructions. (*K. P. Rly. Co. v. Pointer,* 14 Kan. 37; *Beaver v. A. T. & S. F. Rld. Co.,* 56 Kan. 514, 43 Pac. 1136; *Kemp v. Railway Co.,* 91 Kan. 477, 138 Pac. 621.)" (p. 469.)

After reviewing the facts the court held that upon the evidence it can not be said that as a matter of law Wade was guilty of contributory negligence. When the case was here before we recognized the importance of the question involved not only to the parties directly interested, but to the public generally because of the frequency with which similar accidents occur. The case was given the careful consideration which the court deemed its importance required. The law of the case so far as contributory negligence is concerned was determined in the former decision. We are satisfied that the conclusions arrived at then are supported by sound reasoning and therefore shall not in this opinion reconsider that question.

The defendant called two of its employees as witnesses, an inspector and the city foreman at Galena. The inspector testified that on one occasion he had found John Wade moving a house and that Wade was attempting to put the wires over the house without assistance from the company, and that he said to him: "John, do you know what you are doing?" that Wade

replied: "I believe I do"; that he said: "You've got some hot stuff"; that Wade said: "I don't give a damn, I have handled it before"; that he said: "John, you took an awful chance"; that Wade replied he had handled hundreds of the wires. The inspector testified that he told the deceased the company would let him through in the proper manner if notified; also that at another time he helped Wade put wires over a house and told him they would kill a horse, and that Wade would get his sooner or later. Halliwell, defendant's city foreman, testified that he found Wade moving a building and that Wade had let the wires of the defendant down in the street, and that he told him the current on the wires was dangerous and liable to hurt some one; and that he offered his assistance in passing under the wires whenever notified; also that he had another talk with Wade a few weeks before the latter was killed. At that time Wade was moving a house, the owner of which had notified Halliwell, and when the latter arrived, Wade said if he had not come pretty soon he would have moved the house without him. Halliwell says he told Wade the wires were dangerous, that he was liable to be injured or killed in trying to handle them. Another employee of defendant testified that he was present and heard both conversations testified to by Halliwell.

The jury by their special answers indicate that for some reason they discredited the testimony of these witnesses. It is urged that this shows the finding is contrary to the evidence and should have been set aside. Where the trial court is satisfied that the jury have disregarded evidence it should consider that fact on the motion for a new trial in determining whether the verdict has been the result of passion and prejudice; but where the case comes to this court with the verdict approved by the trial court it will be presumed that the court which heard the testimony of the witnesses did not regard the finding of the jury as such evidence of passion and prejudice as to warrant a new trial. As has been repeatedly held this court can not weigh the evidence. Notwithstanding the repeated decisions to this effect, the brief of the defendant marshals the evidence on which the plaintiff sought to show that derricks and machinery had frequently been transported over this road for many years before the accident. As against this, the defendant arrays the testimony of its witnesses to the contrary, together

with facts and admissions drawn out by the cross-examination of plaintiff's witnesses, and the contention is made that the evidence does not sustain the finding that the road had been generally used for the purpose of hauling derricks, houses and machinery which were higher than the wires of defendant. The answer to all this is, as stated, that we can not weigh the evidence.

The defendant called a large number of expert witnesses, men of wide experience in the field of electrical engineering, who testified that it was not good practice to insulate wires carrying a voltage as high as 5500; that it was better not to insulate because the insulation would not be a protection, and the mere fact that an attempt had been made to insulate would lead inexperienced persons to assume or believe they could handle the wires with safety, and would result in more accidents than if insulation had not been attempted. Others testified that in the general practice of the best managed electrical companies, wires carrying above 2500 volts are not insulated; that in outdoor construction it is impossible to insulate wires carrying 5500 volts so as to make them safe to handle. It is said in the brief:

"We contend . . . that our construction was in good condition and that it complied with all requirements as to safety as determined by the expert witnesses."

But expert witnesses determine nothing. They testify to facts and to their opinions concerning conditions and the jury determine what the facts are.

It is argued that if defendant's contention in regard to insulation is true then there was no negligence in its failure to have the wires insulated. It is insisted that the former opinion invited defendant to introduce persons competent to testify on this subject. The portion of the opinion on which it relies reads:

"Some of the witnesses said that the insulation of these high-voltage wires would be so expensive as to be prohibitive. Others testified that the wires could be insulated at the crossing without great expense as it could be done for forty cents a foot. Whether it is practicable to insulate even at crossings is a question upon which persons appear to differ. (94 Kan. 466.)

It is said the defendant complied with the invitation and produced a large amount of testimony showing that it is im-

practicable to cover the wires with insulation, and complaint is made that the trial court ignored this testimony and instructed as a matter of law that defendant was guilty of negligence if it failed to insulate. In this connection error is predicated upon the refusal to give two instructions which the defendant offered, in substance, that if the jury believed it was impracticable to insulate the wires then no negligence could be based upon defendant's failure to do so. The particular instruction which the court gave and which is objected to, charged the jury that if they found from the evidence that the business of moving derricks and other properties of a greater height than the wires of the defendant where they were strung across the highway was a common and ordinary custom which had existed for a number of years, and the defendant knew of these facts or could have known thereof, and might have "reasonably anticipated that persons might rightfully be in proximity to or come in contact with its said wires and it failed to use the highest degree of care to insulate the same and make and keep them safe and by reason of such failure the said John Wade was injured in such manner that he died, while he himself was in the exercise of ordinary care, from a contact with such wires, then the defendant would be liable and the plaintiff would be entitled to recover." The part of the instruction quoted is objected to on the ground that it in effect charged the jury that unless the defendant insulated its wires it was guilty of negligence, and that the court not only ignored the defendant's testimony on this issue by refusing to give the instructions requested, but committed error in deciding as a matter of law that it was the defendant's duty to insulate its wires; and our attention is challenged to the answer which the jury gave to the first question submitted by the plaintiff, as follows:

"No. 1. Was the deceased killed by reason of the uninsulated and unsafe condition of defendant's electric wires which crossed the public highway? Answer. Yes."

The defendant cites numerous authorities in which this court has held that a judgment will be reversed for refusal of the trial court to instruct the jury concerning a disputed question of fact, and others holding that the trial court should fairly present the law applicable to the theories of both parties so far

as they are supported by any evidence. (*Morse v. Ryland,* 58 Kan. 250, 48 Pac. 975; *Honick v. Railway Co.,* 66 Kan. 124, 71 Pac. 265.)   It is urged that the instruction was improper because it assumes a fact disputed by the evidence.   It is only fair to consider the criticism of this particular instruction in connection with other instructions which charged the jury that the duty rested upon the defendant to keep its wires insulated so as to be harmless to others, "or if not insulated then to place and keep them in a position and location where they will be beyond the reach of all the common ordinary traffic and travel."

Moreover, the defendant is again confronted with the law as declared in the former opinion, where the following excerpt from *Winegarner v. Edison,* 83 Kan. 67, 109 Pac. 778, was quoted (p. 467) with approval:

"If from all the circumstances the defendant had reason to apprehend that the building would be moved under the wires where the accident occurred, it was its duty, knowing its wires to be highly charged with electricity, to have such wires at the street crossing insulated, or to take such other precautions as might be necessary to protect anyone who might be likely to be upon such building from contact with or injury from such wires."   (p. 73.)

The opinion also quotes (p. 467) from *Shank v. Great Shoshone & Twin Falls Water Power Co.,* 205 Fed. 833, 124 C. C. A. 35, a case where a derrick came in contact with electric wires across a highway, as follows:

"It was clearly its duty to have used every reasonable precaution to raise and keep its high power transmission wires sufficiently high above ground for the safe passage of such structures as the plaintiff was engaged in moving at the time and at the place he was injured.   Such structures were common to that locality."   (p. 837.)

In a very recent case (*Snyder v. Light Co.,* ante, p. 157, 157 Pac. 442), it was said:

"It was a continuing duty of the defendant to keep its wires insulated, but it appears that the insulation had been broken and the wires had been partly bare for a long time.   The defendant, therefore, must have known that the wires were uncovered and the electric current unconfined at the place in question."   (p. 161.)

In that case, as in this, the defendant's lines were insulated when first constructed, but defendant failed to keep them insulated.   Again it was said in the opinion:

"If accidental contacts with the unprotected wires or contacts which

occur through the act of third parties, either adults or children, are not within reasonable anticipation there is little if any reason for insulation of wires which are placed thirty feet above the ground. What is the necessity for insulating wires hung beyond the reach of any one? It is surely not alone required for the protection of employees who may have to handle them. These were not the only ones for whom the law requires such protection. Insulation is required largely because the uncovered high voltage wires are a menace to the public through contacts of an accidental character or by the thoughtless action of third parties or through the acts of children. Occurrences of this kind happen often enough in a thickly settled community to admonish those in control of such wires to cover them and provide against such interventions and contacts." (p. 162.)

The trial court, in the instructions complained of, used substantially the same language in defining the duties of the defendant in this case as the court used in the cases just cited. It is conceded that the wires which caused the death of Wade were insulated at one time, but the insulation had worn off, and that they carried a voltage of 5500.

In the twelfth instruction the court charged the jury that in determining whether Wade exercised the degree of care and caution which a reasonably safe, careful and prudent person would have used, they should take into consideration the circumstances which surrounded the deceased and, among other things, "any notice he may have had of the dangerous condition." This is criticized on the ground that the court assumed the wires were in a dangerous condition. We think the criticism is unjust. In that particular instruction the court was not undertaking to state what would establish negligence of the defendant, but was explaining what the jury should consider in determining the kind of care and caution with which Wade was chargeable at the time he came in contact with the wires, and the words "dangerous condition" meant no more than if the court had said "any notice he may have had of the danger to himself in handling the wires." Defendant concedes they were dangerous to any person coming in contact with them.

It is seriously contended that the trial court erred in refusing an instruction that John Wade was a trespasser when he drove the derrick against the wires, and therefore the defendant owed him no duty except not to kill him wantonly. The first case cited in support of the rather novel contention that Wade was a trespasser, or, as suggested, "at least a mere licensee," is *McCaughna v. Electric Co.*, 129 Mich. 407, 89

N. W. 73, 95 Am. St. Rep. 441. The syllabus in that case reads:

"An electric-light company maintaining its overhead and guy wires over the private premises of a railway company need not protect trespassers thereon, nor is it liable for injury to them caused by their coming in contact with a live guy wire." (95 Am. St. Rep. 441.)

In the opinion it is stated that the place where the injury occurred was not a public way, but the private premises of a railway company, a secluded spot where the deceased and a companion with bottles of beer went in the evening. The deceased took hold of a guy wire which was charged by having come in contact with a live wire. There was no evidence that the officers of the company knew of the condition of the guy wire. All that was claimed was that defendant was negligent in failing to discover the condition. Wade was lawfully using a public highway at the time he was killed and was in no sense a trespasser; nor was he a mere licensee of the defendant.

Complaint is made because the court refused an instruction to the effect that the defendant company had the right to maintain its wires across the road. As no one contended to the contrary, an instruction of this kind was not needed. The jury understood without an instruction that the defendant had the right to maintain its wires lawfully upon the highway, provided it took proper precautions to prevent persons lawfully using the highway from being injured by coming in contact with them. We have carefully examined the instructions given and do not think they are open to the objection that the court assumed the existence of any of the material facts against the defendant.

The jury find that the deceased could have moved the derrick under the wire by lowering it and hauling it in a horizontal position. It is contended that upon this finding defendant was entitled to judgment and that the court should have held the deceased guilty of contributory negligence as a matter of law, because he failed to adopt a safer method. That there was a safer method was one of the facts and circumstances proper for the jury to consider in determining whether Wade exercised ordinary care and prudence.

The defendant offered testimony to prove that no accident

had ever occurred at the place prior to the death of Wade. It is said in the brief:

"If the numerous high structures were moved as claimed by the plaintiff, and no accidents ever occurred, is not this of itself strong evidence to show that defendant's wires were not in an unsafe and dangerous condition?"

That no accident occurred there before was a circumstance which it was proper to urge before the jury, but the fact itself has no place in an argument before a court which can not determine facts.

Some of the special questions submitted by the plaintiff are open to the criticism that they assumed as true some of the controverted questions. They were objected to for this reason. We do not consider them unfair in substance, and we think the defendant sustained no prejudice by the form in which they were drawn. The material facts in the case were not as involved or complex as defendant seems to think they were. There was no dispute as to the manner in which Wade met his death or that it was caused by his coming in contact with the uninsulated wires of defendant. Whether he was exercising ordinary care and caution at the time; whether the hauling of such a derrick along that public highway was a common occurrence and such a use of the highway as might reasonably have been anticipated by the defendant; and whether the defendant was negligent, were the material issues. There were others of importance, including Wade's knowledge and notice of the dangerous nature of the wires, but the jury could not have been misled by the form of the special questions submitted.

We find no error in the refusal of the instructions requested, nor in those given. The case is one that turns upon facts which the jury have found against defendant upon sufficient evidence. It follows, therefore, that the judgment must be affirmed.

PORTER, J. (dissenting) : When the case was here before I felt constrained to dissent from the decision, because it seemed clear to my mind that it should be said as a matter of law that Wade was guilty of contributory negligence. A careful consideration of the evidence at the second trial, showing more fully his experience with such wires, and a few additional circumstances as to the warning given him at the time he went upon

the derrick, has only served to strengthen the opinion that his death was caused by his own reckless disregard of ordinary prudence and caution.

I concur in all that is decided in the opinion except as to the question of contributory negligence.

DAWSON, J., dissents.

MARSHALL, J., not sitting.