No. 20,424.

MANNY LOGAN, *Appellee*, v. THE EMPIRE DISTRICT ELECTRIC COMPANY, *Appellant*.

SYLLABUS BY THE COURT.

NEGLIGENCE — *Uninsulated Wires Over Highway — Moving Building — Contact with High Tension Overhead Wires—Personal Injuries.* The defendant maintained across a public road a system of poles and wires, including two telephone wires and a ground wire, which were nineteen feet above the roadway, and two high-tension wires, uninsulated, which carried 33,000 volts and which were suspended twenty-three feet two inches above the roadway. Plaintiff was assisting in moving a frame store building along the road, and while attempting to raise the telephone wires or the ground wire over the roof of the building he came in contact with one of the high-tension wires and received serious injuries. *Held:*

1. SAME—*Evidence of Extent and Use of Highway Proper.* For the purpose of showing that defendant should have anticipated the use

of the highway for such purpose, evidence was admissible to show the extent to which the highway had been used for moving of buildings, machinery and other structures higher than the wires in question, not only before, but after defendant's wires were placed there.

2. SAME—*Evidence—Finding—Wires a Menace—Notice to Defendant.* The evidence justified a finding that before the wires were erected there had been, and thereafter continued to be, such a use of the highway for moving buildings, machinery and other structures as would bring notice to the defendant that its high-tension wires were a menace to human life, unless precautions were taken to prevent their interference with such use.

3. SAME—*Duty of Defendant to Anticipate Proper Use of Highway.* It was the duty of the defendant to anticipate the moving of buildings of greater height than the wires and to take precautions to protect persons liable to be on such structures from danger of coming in contact with its wires. (*Winegarner v. Edison,* 83 Kan. 67, 109 Pac. 778.)

4. SAME—*Evidence—Rule of Defendant—Offering Assistance Upon Notice—Rejected—Not Error.* There was no error in excluding testimony offered to show a rule of defendant that upon notice to it defendant would render assistance to persons desiring to move such structures under its wires, for the reason that the defendant, by the adoption of such a rule could not limit the right to use the highway for lawful purposes.

5. SAME — *Impracticability of Insulating Wires — Duty of Defendant.* The fact that the undisputed evidence showed the impracticability of insulating wires carrying more than 6000 volts will not preclude plaintiff's right to recover on the other ground of negligence charged, viz: a failure to place the wires high enough to avoid interference with the lawful use of the highway.

6. SAME—*Evidence—Model of Place of Accident—Rejected—No Error.* On the facts stated in the opinion there was no abuse of discretion in refusing to admit in evidence a model or reproduction of the system of defendant's poles and wires.

7. SAME — *Trial — Refusal to Instruct as to Wanton Negligence — No Error.* On the facts stated in the opinion there was no error in refusing to give an instruction to the effect that there was no evidence of wanton negligence; nor in refusing an instruction that the word "wanton" means "reckless, wicked, willful."

8. SAME—*Verdict and Judgment—Not Excessive.* On the facts stated in the opinion a judgment for $15,000 can not be regarded as so excessive as to show prejudice and passion on the part of the jury.

Appeal from Cherokee district court; JAMES N. DUNBAR, judge. Opinion filed December 9, 1916. Affirmed.

*William F. Sapp, Andrew S. Wilson,* both of Galena, and *Arthur E. Spencer,* of Joplin, Mo., for the appellant.

*C. A. McNeill,* of Columbus, *Maurice McNeill,* of Kansas City, Mo., *C. S. Walden,* and *W. N. Andrews,* both of Joplin, Mo., for the appellee.

The opinion of the court was delivered by

PORTER J.: The action was to recover damages for injuries sustained in coming in contact with heavily charged and uninsulated wires which defendant maintained across a public highway. Plaintiff recovered judgment and defendant appeals.

Upon the facts, the case is quite similar to the Wade case against the same defendant (*Wade v. Electric Co.,* 98 Kan. 366, 158 Pac. 28). Wade was killed by coming in contact with high voltage wires of the defendant, while he was engaged in attempting to lift them over the top of a derrick which he was assisting in moving along a public road. His widow recovered a judgment which was affirmed.

The plaintiff in the present case was assisting in moving a frame store building along a public road across which defendant maintained its line of poles and wires. Two telephone wires and a ground wire which were nineteen feet above the road were suspended from one cross-arm; from another cross-arm were suspended two 33,000 volt wires which were twenty-three feet two inches above the roadway. The store building was moved on trucks which brought the highest part of the structure to a height of twenty-one feet three inches. Plaintiff was on the roof of the building attempting to raise the telephone wires or the ground wire, and in some manner came too near one of the heavily charged wires just above the one he was handling and received the shock which caused his injuries. The wires carrying a voltage of 33,000 were uninsulated.

The principles of law, which for the most part control this case, were quite fully considered in the Wade case, *supra,* and it will be only necessary to review a number of alleged trial errors.

It is complained that the court erred in not sustaining a motion for judgment on the findings, because it is insisted the

plaintiff recovered upon a theory that ordinary travel on the highway in question included the moving of houses which were higher than defendant's wires. In this connection also it is insisted that much irrelevant testimony was admitted about moving houses and *other structures,* and particularly the moving of them along this highway previous to the time defendant erected its wires. In answer to special questions which defendant submitted the jury found that defendant's wires were erected in 1909, that since that time three houses and one store building which were high enough for the wires to interfer with had been removed along there. The accident to plaintiff occurred in 1915.

Defendant places too narrow a construction upon plaintiff's theory as to the use of the highway. The plaintiff's evidence as to the use of the highway was not confined to houses, nor to store buildings; it embraced any and all kinds of structures customarily moved along public roads, such as buildings, derricks and other machinery high enough for these wires to interfere with them. The testimony in respect thereto was, of course, not confined to the time since defendant placed its wires across the road. It would hardly do to say that had the accident happened only a month after defendant first placed its wires there no inquiry could be made as to the ordinary use of the road prior thereto for the purpose of charging defendant with notice of such use. The finding that only one store building had been moved is of no more importance than if the jury had found that only one store building painted the same color as the building in question had been moved. The finding that three houses and only one store building high enough to interfere with the wires had been moved along that road since 1909, when defendant's wires were first placed there, covers but a part of the facts in evidence, and only a part of the circumstances relied upon by plaintiff, to show that defendant should have anticipated the use of the highway for the purpose of moving such structures.

It is argued, however, that all the evidence shows conclusively that the moving of a building, such as the one in question, was not a common, ordinary use of the highway. "Common, ordinary use" is a relative expression the value of

which can only be determined by comparisons. In a day's travel along the country roads one may meet hundreds of vehicles drawn by horses, and see thousands of automobiles, without meeting or seeing a traction engine; but, if one meets a traction engine on a public road, it would be a mistake to assume that such engine was not making an ordinary use of the highway, or that it was not entitled to the same rights as other vehicles. A traction engine on the streets of Topeka is, comparatively speaking, an unusual sight, yet sometimes traction engines are seen on the streets, and however rarely this happens, their use of the public streets is a common and ordinary one. The court properly instructed the jury that "in determining the duty and ability of the defendant the term 'travel' is not to be given a narrow and restricted meaning, but should be held to embrace such a legitimate use of the road as may be made by persons having occasion to pass over them while engaged in any of the duties of life in that section or community." There was evidence which justified a finding that before the wires were erected there had been, and there afterwards continued to be, such a common use of the highway in moving buildings, machinery and other structures, as would bring notice to the defendant that these high-voltage wires were a menace to human life, unless precautions were taken to insulate the wires or place them in such position that they would not interfere with the lawful use of the highway.

It may be conceded that there is a difference as regards houses. They are not constructed primarily for the purpose of being moved, while heavy machinery and traction engines are. The use of streets and highways for moving houses is so far extraordinary as to authorize municipalities having control of the highways to provide regulations for such use, prescribing, as ordinances in many cities do, the hours streets may be used for that purpose, and that owners of overhead wires shall first be notified and given an opportunity to raise their wires, and providing for payment of compensation to the owners for the injury or inconvenience suffered. These regulations are upheld, also, because of the inconvenience that might otherwise be suffered by the public through the interference with the business carried on by means of overhead wires. Where no

25—99 KAN.

public authority has undertaken to prescribe rules and regulations for the use of country roads in moving houses, we are aware of no reason why such use is not a lawful one.

A number of cases are cited by defendant which hold that the moving of houses on public streets is an extraordinary use of the highway, and that where such use will injure or destroy overhead wires which are lawfully maintained in the streets, injunction will lie at the suit of the owners of the wires to prevent interference therewith. Equity, in most cases, would find little difficulty in moulding its decree so as to permit the structure to be moved at a time and under such conditions as to safeguard the rights of the mover, the convenience of the public and the rights of the owners of the wires. Presumably the decisions are cited because the opinions contain declarations to the effect that the moving of a house on roads or streets is an extraordinary use, and the rights of the mover merely temporary and private as opposed to the rights of a public-utility company using the streets by virtue of a city franchise. (*Frontier Telephone Co. v. Hepp,* 121 N. Y. Supp. 460.) It is sufficient to say that this court in *Winegarner v. Edison,* 83 Kan. 67, 109 Pac. 778 (approved in *Wade v. Electric Co.,* 98 Kan. 366, 158 Pac. 28) held it to be the duty of an electric-light company having its high-tension wires suspended across a street in a city to anticipate the moving of a building of greater height than the wires in that case were, and to take precautions to protect persons liable to be on such building and liable to be brought in contact with such wires.

There is a contention that it was error to exclude testimony offered to show a rule of defendant that upon notice to it the company would render assistance to persons desiring to move such structures under its wires. There would have been no error in admitting the testimony, but the defendant by the adoption of such a rule could not limit the right to use the highway for a lawful purpose.

One of plaintiff's witnesses testified that it is impracticable to insulate wires which carry more than 6000 voltage, and we are asked, in view of the general knowledge of that fact, to take judicial notice thereof and to hold that the court should have sustained a demurrer to the evidence. But failure to insulate the wires was not the only negligence charged. It was

charged that the wires were not placed high enough; and if it be true that it is wholly impracticable to insulate wires carrying more than 6000 volts, there was all the more reason why the defendant should have placed its wires higher or put them under-ground. The same witness, who qualified as an expert with years of experience in the construction of high-tension, cross-country wires, testified as follows:

"We are never allowed to go below 25 feet and from that on up to 35 and 40 and up as high as .65 feet; we have never been allowed to go below 25 feet with any thing of high tension."

He further testified that it was customary to construct high-tension wires with a raise where they crossed roads and after crossing to "drop down."

There is a complaint of the refusal to allow defendant to introduce a model made to show the arrangement of defendant's poles and wires. The accident happened across the line in Missouri, beyond the jurisdiction of the court, and for this reason the court was not asked to send the jury to the place of the accident. In almost every one of a large number of cases cited the court had admitted the model or photograph, and this was held not to be error. In one case cited (*De Forge v. New York, &c., Railroad,* 178 Mass. 59, which was an action to recover for personal injuries, it was held error to refuse to admit in evidence an X-ray picture showing plaintiff's physical condition. The weight of authority holds that the admission of models and photographs rests largely in the trial court's discretion. A reproduction of the poles and wires in this case was constructed and set up in a room adjoining the courtroom. The judge of the court examined the model and came to the conclusion that it ought not to be admitted in evidence, and sustained plaintiff's objection. The defendant contends that the model would have served to enable the jury to understand the testimony, and that its purpose was to show the relative position of the wires, the cross-arms, brackets, insulators and other parts of the construction of defendant's lines where they crossed the highway. All these matters could be and were explained by the evidence of witnesses, and while the admission of the model would not have been error, we think it can not be said that there was an abuse of discretion in refusing to admit it.

In stating the issues the court instructed that the petition charged the defendant with wanton negligence. The court refused to give an instruction requested by the defendant to the effect that there was no evidence of wanton negligence, and also refused a requested instruction that the word "wanton" means "reckless, wicked, willful." It is insisted this was error. There is no question of punitive damages in the case; none was asked and none was allowed. If the plaintiff was not guilty of contributory negligence, then the question whether the negligence of the defendant should be characterized as gross and wanton or merely ordinary negligence, could not affect plaintiff's right to recover. (See *Jacobs v. Railway Co.*, 97 Kan. 247, 253, 154 Pac. 1023.) The court instructed that plaintiff could not recover at all if his own negligence contributed to his injuries; and the jury have absolved him from the charge of contributory negligence. For some purposes the court, in a number of cases, has recognized the degrees of negligence, slight, ordinary and gross or wanton; but in a case like the present one, where the only question is the measure of due care, the distinctions have been ignored. (*Railway Co. v. Walters,* 78 Kan. 39, 96 Pac. 346; *Jones v. Railway Co.,* 98 Kan. 133, 135, 157 Pac. 399.) There was no error, therefore, in refusing to give the instructions requested.

The jury awarded plaintiff damages in the sum of $15,000. It is urged that the amount is excessive and shows prejudice and passion on the part of the jury. At the time of his injury plaintiff was twenty-two years of age, and his usual wages were from $2 to $2.50 a day. The argument is that after allowing $1000 for damages in addition to loss of earning power, the amount remaining, if invested at six per cent, would produce a sum far in excess of plaintiff's probable earnings in the future. If this were the only consideration the amount would seem excessive; but the nature and the extent of plaintiff's physical injuries as shown by the evidence must be taken into consideration. The effect of the electric current rendered him unconscious for ten days. A piece of his skull, which the testimony shows was four inches in length and nearly two inches wide, had to be chiseled out, which necessitated six operations, a silver plate being inserted in place of the portion removed. There were burns and scars on his

body, and one hand was partially paralyzed; there was evidence that his injuries left him, to a large extent, in a helpless condition physically. How much the jury allowed for his pain and suffering does not appear, but it is clear that the evidence would sustain the allowance of a substantial sum for these alone. Under all the facts and circumstances, this court can not say that the trial court should have granted a new trial on account of the amount of the verdict, or that it is excessive.

Other claims relate to the exclusion of testimony which was not produced at the hearing of the motion for a new trial under section 307 of the code. The nature of the testimony, so far as disclosed by the record, satisfies us that there was no error in excluding it.

The judgment is affirmed.

PORTER, J. (dissenting): I think the amount of the judgment is excessive and that it should be reduced to $10,000. For these reasons I dissent from paragraph 8 of the syllabus and corresponding portions of the opinion.

I am authorized to say that Mr. Justice BURCH and Mr. Justice DAWSON concur in this dissent.