No. 21,867.

CLARA THOMPSON, as Administratrix, etc., *Appellee*, V. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, *Appellant*.

### SYLLABUS BY THE COURT.

1. MASTER AND SERVANT—*Personal Injuries—Evidence—When Fact for the Jury*. From the evidence on certain questions, different minds might reasonably have reached different conclusions; therefore, the findings of the jury on those questions, having received the approval of the trial court, and being conclusions that might reasonably have been reached from the evidence, will not be disturbed.

2. SAME—*Contributory Negligence—Eliminated by Findings*. The defense of contributory negligence was eliminated by the findings of the jury, which findings showed, either that the deceased was not guilty of contributory negligence, or that the defendant had not complied with the federal employer's liability act.

3. SAME—*Defective Car Coupler—Finding Sustained by Evidence*. Evidence that an automatic car coupler failed to couple on two successive impacts warrants a jury in finding that the coupler was defective, and where the evidence shows that the car was old and was destroyed soon thereafter, the jury is justified in finding that the coupler was worn.

Appeal from Harvey district court; FRANK F. PRIGG, judge. Opinion filed January 11, 1919. Affirmed.

*William R. Smith, Owen J. Wood, Alfred A. Scott*, all of Topeka, and *William Osmond*, of Great Bend, for the appellant.

*S. B. Amidon*, of Wichita, *Ezra Branine*, and *Harry W. Hart*, both of Newton, for the appellee.

The opinion of the court was delivered by

MARSHALL, J.: This action, under the federal employer's liability act, was brought by Clara M. Thompson, administratrix of the estate of John M. Thompson, who, on January 27, 1916, was killed in the defendant's yards at Newton. Judgment was rendered in favor of the plaintiff for $5,500, and the defendant appeals.

There was evidence which tended to prove the following facts: John M. Thompson was in the employ of the defendant as a foreman in repairing cars, but he had nothing to do with switching cars, except to indicate where he wanted them placed.

On the day that he was killed, there was in the Newton yards a flat car on which there were some pieces of timber that Thompson desired to have moved to another place in the yards. There was a coal car coupled to the flat car. The latter had standards or stakes on it to prevent the timbers from sliding or shaking off. Thompson asked the switch foreman to move the car. At that time, Thompson was standing on the ground. A coal car was coupled in front of the engine that was to do the moving. Thompson got upon the flat car, and removed one of the standards. The engineer moved the engine to the flat car, and attempted to couple on to it by impact, but the couplers failed to lock or unite, and the flat car with the coal car attached to it was knocked six or eight feet. During that attempt, Thompson was standing on the flat car. A second attempt to couple was made. Thompson was then standing about the middle of the flat car and about six feet from the end nearest the approaching engine. On this attempt, when the engine and coal car struck the flat car, the couplers again failed to lock, the flat car and coal car were knocked some distance, and Thompson fell forward under the wheels of the car attached to the engine and was almost instantly killed. He did not have hold of anything, and was standing upright at that time, although there was nothing to prevent him from supporting himself against a standard then in position on the car.

The negligence alleged by the plaintiff was that the engine was being run at a reckless rate of speed, and that the cars were not equipped with couplers that would couple automatically by impact. The answer set up a general denial, and pleaded assumption of risk and contributory negligence.

The jury answered special questions as follows:

"1. If you find the defendant negligent, state fully in what such negligence consisted. A. The negligence of the switching crew and car inspectors.

"2. At what rate of speed was the engine moving when the cars came together at the second attempt to couple? A. Five to seven miles per hour.

"3. How far did the flat car and the coal car which they were attempting to couple move after being struck? A. From 14 ft. to 18 ft.

"4. What duties to perform had Thompson on the flat car at the time he was killed? A. To unload material which was upon flat car.

"5. Could not Thompson have performed any duties he had just as well if he had remained on the ground until the flat car was moved to the place where it was to be unloaded? A. Could have by loss of time.

"6. If Thompson had braced himself against a standard would it not have greatly decreased the liability to accident? A. No.

"7. What was there to prevent him from bracing himself against a standard? A. His judgment, on account the danger.

"8. How much do you reduce the damages because of the contributory negligence of Thompson? A. None whatever.

"9. If you find that the automatic couplers were out of order, state in what respect they or either of them was out of order. A. By general wear.

"Q. Is it not a fact that the couplers on the two coal cars at the time in question were defective? A. Yes.

"Q. Is it not a fact that the engine at the time of the attempt to make the second coupling was run at an excessive speed? A. Yes."

1. One of the defendant's contentions is that there was no evidence on which to base the answers to the sixth and seventh questions. The defendant also contends that those answers were contrary to the evidence.

On the oral presentation of this cause to this court, the statement was made that at the time of the second attempt to couple the cars there was only one standard left in place on the flat car. The evidence showed that the standard was at the end of the car next to the approaching engine. To have taken hold of that standard would have left Thompson standing near the end of the flat car when the cars came together. It might have been that, if he had remained near the end of the car, the danger of his falling through the opening between the cars would have been increased. Different men might reasonably reach different conclusions concerning what was the safest thing for Thompson to do. For that reason, the court cannot say, as a matter of law, that if Thompson had taken hold of the standard to support himself he would have decreased the danger. (*Kemp v. Railway Co.*, 91 Kan. 477, 138 Pac. 621; *Wade v. Electric Co.*, 94 Kan. 462, 469, 147 Pac. 63; *Id.*, 98 Kan. 366, 371, 158 Pac. 28.) The circumstances surrounding the accident, so far as the position of Thompson on the car was concerned, were fully described by the witnesses. The sixth and seventh questions were submitted to the jury, and it cannot be said that the answers thereto had no support in the evidence. Different answers might have been

returned, and those answers might have been supported by the evidence; but the questions were to be answered by the jury, not by the judge of the trial court. The jury answered; those answers were supported by the evidence; they received the approval of the trial court; and they cannot now be disturbed.

2. The defendant argues that the answer to the fifth question established contributory negligence on the part of Thompson. It is not apparent how this court can say that the answer to that question showed that Thompson was guilty of such negligence. There was evidence which tended to show that Thompson had been instructed not to ride on the cars. The jury might have found that Thompson, in riding on the car, was guilty of contributory negligence, even if no such instruction had been given him. Whether he was guilty of such negligence was a question for the determination of the jury from the evidence. The jury was, in substance, instructed that if Thompson was guilty of such negligence, which contributed to his death, the verdict should be diminished on account thereof, unless the defendant had failed to comply with the act of congress requiring that cars be equipped with couplers coupling automatically by impact. (Part 1, 27 U. S. Stat. at Large, 531, ch. 196, § 2.) The answers to the ninth question and to the unnumbered one following it establish that the couplers were defective. Section 3 of chapter 149 of 35 United States Statutes at Large, part 1, reads:

"That in all actions hereafter brought against any such common carrier by railroad under or by virtue of any of the provisions of this act to recover damages for personal injuries to an employee, or where such injuries have resulted in his death, the fact that the employee may have been guilty of contributory negligence shall not bar a recovery but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee; provided, that no such employee who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee."

That section, with the finding numbered nine and the one following it, eliminates the question of contributory negligence on the part of Thompson. The answer to the eighth question clearly indicates one of two things: either that the jury found that Thompson was not guilty of contributory negligence, or

that the defendant failed to comply with the act of congress requiring cars to be equipped with automatic couplers. In either event, the defendant's argument fails.

3. The defendant contends that there was no evidence to support the answer to the ninth question. The failure of the cars to couple on two attempts was shown. That of itself warranted the jury in finding that the couplers were defective. (*Spokane & Inland R. R. v. Campbell,* 241 U. S. 497; *Atlantic City R. Co. v. Parker,* 242 U. S. 56; *Minn. & St. Louis R. R. Co. v. Gotschall,* 244 U. S. 66; *Nichols v. Chesapeake & O. Ry. Co.* 195 Fed. 913; *N. C. & St. L. R. v. Henry,* 158 Ky. 88; *Davis v. Minneapolis & St. L. Ry. Co.,* 134 Minn. 369; *Parker v. Atlantic City R. R. Co.,* 87 N. J. L. 148.) But the failure to couple did not of itself indicate the particular defect. There was evidence to show that the car on which Thompson was standing was old, and that in a few days thereafter the defendant destroyed it. The evidence of the failure to couple and of the old condition of the car, was sufficient to warrant the jury in concluding that the coupler thereon was worn so as to render it defective. The petition alleged that the coupler was defective. The failure to couple tended to show that fact. That was all that was necessary for the plaintiff to prove.

The judgment is affirmed.